Monty W. Ervin and his wife Patricia D. Ervin sued to quiet the title to land they claimed to have bought through a tax sale and to eject the defendants Arthur L. Powell, Sr., and his wife Irell C. Powell from that land. The Geneva Circuit Court ruled in favor of the Ervins, after conducting a bench trial. The Court of Civil Appeals, on April 2, 1998, affirmed, with no opinion.Powell v. Ervin (No. 2980059), ___ So.2d ___ (Ala.Civ.App. 1998) (table). We granted the defendants' petition for certiorari review. We reverse and remand.
In 1927, Lula Smith purchased all of the property that is relevant in this case. She conveyed three portions of that property, one each to her granddaughter Minnie Jewel Griffin and her two daughters Ruthie Jane Griffin and Gertrude Kirkland. Two of the properties, those of Ruthie Jane Griffin (that property is hereinafter referred to as parcel 3.2) and Gertrude Kirkland (that property is hereinafter referred to as parcel 5), were identical in size and were located close to each other. The deeds for both of these conveyances described the property in the same way:
 "One lot being 50 feet on the north side, 100 feet on the east side, 50 feet on the south side, and 100 feet on the west side. The said lot being situated in the N.W. corner of the N.E. 1/2 of the N.W. 1/2 *Page 231 
of section (6) six, township one, range twenty five in Geneva County, Alabama."
Ruthie Jane Griffin received from Lula Smith additional land surrounding parcel 3.2, and then more land from Gertrude Kirkland and Jewel Griffin; none of these additional conveyances included parcel 5.
Ruthie Jane Griffin ("Griffin") gave a mortgage on parcel 3.2 to Farmers Home Administration to secure an indebtedness of $7,200 incurred when she borrowed money to replace the roof on a house on this property.
Griffin defaulted on the FmHA mortgage. At the foreclosure sale on November 9, 1992, Arthur L. Powell, Sr., purchased the property mortgaged by Griffin to FmHA. The mortgage and the foreclosure deed described that property just as it was described in the deed conveying it from Smith to Griffin, except that the words "Township" and "Range" were abbreviated as "T" and "R."
The tax assessor's office incorrectly assessed the property Powell had purchased as being parcel 5 instead of parcel 3.2. Both before and after the foreclosure sale, parcel 5 was owned by Gertrude Kirkland, who had had it assessed for taxes and had paid taxes on it.
Griffin failed to pay taxes on the property that she owned that surrounded Powell's parcel 3.2. Griffin's property was sold for taxes, but, because of the tax assessor's mistake in assessing Powell's property as being parcel 5, parcel 3.2, along with the property that surrounded it, was sold to the Ervins at the tax sale. A tax deed was issued to the Ervins on May 15, 1997. Powell had paid all taxes on the property assessed to him.
The undisputed evidence is that Powell, at all times since he purchased parcel 3.2, has been in actual or constructive possession of it. He has made improvements on it and has leased it to tenants. Both the tax assessor and Powell separately came to the conclusion, after the tax sale was completed, that Powell's tax assessment was incorrect. The problem was being remedied when the Ervins filed this quiet-title/ejectment action.
Greg Harrison, of the Geneva County Mapping and Appraisal Department, testified that someone in the tax assessor's office had listed the wrong property as belonging to Powell. He said:
 "Griffin and Mr. Powell got the foreclosure deed, the legal description of that deed called for 50 feet east and west by 100 feet north and south in the Northwest corner of that forty. And parcel 5 was exactly in the Northwest corner of that forty. So, the girl that was doing our mapping said, well, there it is exactly and she changed parcel 5 into Mr. Powell's name. However, she shouldn't have, because she should have looked at the present owner of that property that we had it assessed to, to see that that wasn't from the foreclosure from that deed, keeping chain of title on that particular piece of property and she changed it erroneously. So then I go out — every deed that's recorded I go out and look at the property and if I can talk to the people I do."
When Harrison went to parcel 5, which had been assessed to Powell, he found Gertrude Kirkland; he then discovered the problem in the assessment. He filled out a "property change" card. On this card, he wrote that after doing a field inspection he had discovered that the property of Powell had been incorrectly assessed and concluded that Powell's assessment needed to be changed to indicate the correct parcel, parcel 3.2. Furthermore, Harrison testified that this mistake had a definite effect on the tax sale to the Ervins:
 "Q: For the basis of tax mapping, for your job, are you convinced that [parcel 3.2] is the proper parcel that Arthur Powell should be assessed with?
"A: I am.
 "Q: And the initial assessment of parcel 5 was in error?
"A: Right. *Page 232 
 "Q: And if he had been properly assessed with parcel 3.2, that land never would have [been] sold for taxes?
 "A: That particular part of the land wouldn't have been sold for taxes but the rest of it around it would have been.
 "Q: The land around it would have but the land in the center wouldn't have, [parcel] 3.2?
"A: Right."
Consequently, the court had before it undisputed evidence indicating that Powell was the owner of parcel 3.2, the parcel in question here, and indicating that his property should not have been sold for taxes.
Harrison, as a representative of the tax assessor's office, has admitted that his office made a mistake, not only as to the assessment of Powell's land, but also in selling Powell's land for taxes.
When evidence is presented to a trial court sitting without a jury, the general rule is that its findings will be presumed correct unless there is plain and palpable error. However, when the material facts of a case are undisputed, as they are here, "`the ore tenus rule is inapplicable and the appellate court shall sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to the facts.'" Ex parte Jones, 669 So.2d 161, 163 (Ala. 1995), quotingJustice v. Arab Lumber Supply Inc., 533 So.2d 538, 542 (Ala. 1988), citing Stiles v. Brown, 380 So.2d 792 (Ala. 1980); Abelv. Forrest Realty, Inc., 484 So.2d 1069 (Ala. 1986); Stinson v.Stinson, 494 So.2d 435 (Ala.Civ.App. 1986). Because there is no dispute as to any material fact, the application of the ore tenus rule would be inappropriate; thus, we will review the evidence de novo.
The issues before this Court are whether Powell owned parcel 3.2, and whether the tax deed correctly conveyed that specific land to the Ervins? The Ervins appear to contend that the mortgage used parcel 5, owned by Gertrude Kirkland, as collateral, and that if there was a mistake in Powell's tax assessment, it did not affect the sale because, they say, the foreclosure deed cannot be reformed in this situation. However, there is no problem with the foreclosure deed. Both the mortgage and the foreclosure adequately describe parcel 3.2, which was owned by Griffin and which was conveyed to Powell at the foreclosure sale. While the description does not locate the land precisely within the area, parcel 3.2 was the only 50' x 100' stretch of land owned by Griffin. The land owned by Kirkland could not have been the property accepted by FmHA as collateral, because Griffin did not own it. Therefore, it is clear to us that the security for the FmHA mortgage, and the property that was conveyed to Powell by the foreclosure deed, was parcel 3.2, which is enclosed within the land purchased by the Ervins at the tax sale.
The current tax deed is defective, and the Ervins cannot receive land based on a defective tax deed. This Court has held that "[a] tax deed is void and conveys no interest where the underlying sale was invalid." Almon v. Champion Int'l Corp.,349 So.2d 15, 17 (1977). In Almon, this Court also held that, "Where taxes are assessed to one who has no interest in the property, a subsequent sale of the property for nonpayment of taxes is void because under these facts, as here, the true owner would receive no notice of the proceedings against his property." Id. The present case is slightly different from Almon. Powell, while having an interest in the property, was assessed taxes for a different property, and so he, like the property owner in Almon, would have received no notice of a proceeding against the property. Therefore, it is clear that this tax deed is void as to Powell's property; the tax assessor could not convey parcel 3.2.[1] *Page 233 
However, this case presents a unique question in that the tax deed was defective only as to Powell's property. The record indicates that the rest of the land the Ervins purchased was correctly sold.
Section 40-10-75, Ala. Code 1975, states:
 "If, in any action brought for the possession of land sold for taxes, the title of the purchaser at the tax sale shall be defeated on account of any defect in the proceedings under which the sale is had, . . . or of the certificate or deed to said purchaser . . ., the officer or officers on account of whose omission or error said defect or insufficiency or defects or insufficiencies shall have arisen, together with the sureties on the official bond, shall be liable to the purchaser whose title shall be thus defeated and to his assignees for the full sum of the purchase money paid by him at said tax sale for said property, the cost of the action in which said title failed, which the purchaser shall have incurred in attempting to maintain his title under said tax sale, together with the interest upon each of these amounts, at the rate of 12 percent per annum; provided that except as to the state, actions under this section shall be commenced within five years from the sale."
We see no reason why the mistaken assessment of Powell's property (parcel 3.2) should invalidate the sale of land that was separately and correctly assessed (Griffin's land surrounding parcel 3.2). As this Court has held before, "an ineffectual attempt to convey a greater estate or interest would not invalidate the conveyance of that property conveyable." Francisv. Sandlin, 150 Ala. 583, 587, 43 So. 829, 830 (1907). Therefore, our decision today regarding parcel 3.2 should not affect the remaining portion of the land that was subject to the tax sale to the Ervins.
Thus, the tax sale was effective as to the land that Ruthie Jane Griffin owned immediately before the tax sale, but the mistake in the assessment of Powell's land invalidates the sale with respect to parcel 3.2. The judgment is reversed insofar as it relates to parcel 3.2, and the case is remanded.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Cook, See, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] We note the arguments of the parties concerning whether Powell took proper steps to redeem the property under Ala. Code 1975, § 40-10-83. Because we hold that the tax deed was invalid with respect to Powell's property, redemption was not appropriate; therefore, we do not address these arguments.