MOORE, Judge.
Beverly Chancy appeals from summary judgments entered by the Autauga Circuit Court (“the trial court”). We affirm in part and reverse in part.

Facts and Procedural History

On February 25, 2008, Chancy filed a complaint in the trial court against Johnson Properties, L.L.C., Wayne M. Johnson, Chancy Lakes Homeowners Association, Inc., Brad Wiggins, Kathleen Wiggins, Cedric Butler, Bridgette Butler, Joseph A. Wolf, Cathee W. Wolf, Roger P. Traywick, Andrea Traywick, Scott Post, Brent Post, Christy C. Post, and Buffi Post; Chancy also sued a number of fictitiously named defendants. Chancy asserted in her complaint that, in September 2003, Johnson had approached Chancy with a proposal to purchase from Chancy approximately 40 acres of property in Autauga County (“the subject property”) in order to develop a subdivision and that Chancy and Johnson had negotiated the terms of an agreement for the sale of that property.
According to Chancy, the terms of the agreement for the sale of the subject property included the reservation of an access easement (“the easement”) allowing Chancy to access approximately 197 acres of property that she owned that lay adjacent to the subject property. Chancy further asserted that she and Johnson had agreed that the easement would be shown on any proposed subdivision plat, that it would be addressed in the restrictive covenants that would bind the lots within the subdivision, and that it would be designed and maintained to meet the City of Prattville’s requirements for a public road. Chancy asserted that she and Johnson had also agreed that any proposed subdivision plat involving the subject property would first be submitted to Chancy for her approval. Chancy further asserted that the terms of the agreement were memorialized in a written document labeled “Agreement.” Chancy attached the Agreement, signed by both Chancy and Johnson, to her complaint.
Chancy asserted that, pursuant to the Agreement, Johnson recorded restrictive covenants for the subdivision, which was named Chancy Lake, in the Autauga Probate Office in a document entitled “Declaration of Protective Covenants for Chancy Lake” (“the Declaration”). Chancy attached a copy of the Declaration, signed by Johnson as manager of Johnson Properties and notarized on April 2, 2004, to the complaint. Attached to the Declaration was a survey/plat that depicted the properties bound by the covenants and the location of the easement. The Declaration stated, in pertinent part:
“WHEREAS, [Johnson Properties] desires to impose and subject the described property and each lot to mutual and beneficial restrictions, covenants, terms, conditions and limitations (hereinafter for convenience sometimes referred to collectively as ‘Covenants’) for the benefit of all the lots in said Subdivision, the owners of said lots, and any other party as may be specified herein;
“NOW, THEREFORE, [Johnson Properties], does hereby adopt and impose the following covenants on the real property described on Exhibit ‘A’. The *290 covenants contained herein shall apply only to Chancy Lake as described on Exhibit ‘A’ and shall not apply to any other land owned by [Johnson Properties], unless specifically imposed upon such other land by a document or plat executed by [Johnson Properties] and recorded in the Office of the Judge of Probate of Autauga County, Alabama.
“These covenants are to run with the land and shall be binding for a period of twenty-five (25) years from the date of the recording of these covenants, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part.
“ARTICLE I

“HOMEOWNER’S ASSOCIATION

“Section 1.1. These covenants are to run with the land and shall be binding for a period of twenty-five (25) years from the date of the recording of these covenants, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part.
[[Image here]]
“ARTICLE V.

“EASEMENTS

“Section 5.1. [Johnson Properties] (1) reserves for itself, its successors and assigns and its other real property located adjacent to the subdivision, the right to use dedicate and/or convey to the State of Alabama, to Autauga County to an appropriate utility company or other company and (2) hereby dedicates for the use of all the lots in the subdivision, rights of way or easements on, over or under the ground to locate and maintain utilities, electric and telephone lines; wires, cables, cable television, conduits, storm sewers, sanitary sewers, water mains, drainage swales and ways and other utilities over the interior ten (10) feet in width along each Lot line.
[[Image here]]
“ARTICLE X

“ADJOINING PROPERTY

“Section 10.1. The real property adjoining Chancy Lake to the east will have a easement for ingress/egress as recorded on the Chancy Lake Plat.
“ARTICLE XI

“TERM AND MODIFICATION

“Section 11.1. These covenants shall run with the land and can be changed, modified, amended, altered or terminated only by a duly recorded written instrument, executed by [Johnson Properties], its successors and assigns, until December 31, 2006, and thereafter by the then owners of eighty-five percent (85%) of the number of lots of this Subdivision.
“ARTICLE XII

“SEVERABILITY

“Section 12.1 Each covenant is hereby declared to be independent of and sever-able from, the rest of the covenants and from every other one of the covenants and of and from every combination of the restrictions. Invalidation by any court of any covenant in this instrument shall in no way affect any of the other covenants which shall remain in full force and effect.”
*291 Chancy asserted that Johnson and Johnson Properties proceeded to sell parcels of property in the subdivision without first obtaining Chancy’s approval as agreed upon. She further asserted in the complaint that a gate had been erected by the Chaney Lake Homeowners Association (“the Association”) at the entrance of the subdivision, that the gate was always locked and could only be opened with a code, and that members of the Association had withheld the access code from Chancy, thereby denying her access to her adjoining property. Chancy asserted that the easement now functions as a drainage culvert for the subdivision and as an overflow ditch for the subdivision pond and that the easement is blocked by power poles and water-drainage infrastructure. Moreover, according to Chancy, the easement was never paved or improved and, thus, does not meet the City of Prattville’s requirements for a public road. According to Chancy, in October 2007, the members of the Association executed a document entitled “Declaration of Amendment to the Declaration of Protective Covenants of Chancy Lake” (“the Amendment”), which deleted Article X of the Declaration in its entirety; the Amendment also deleted Section 5.1, Article V, of the Declaration. A copy of the Amendment, which had been signed by each of the members of the Association, was attached to Chaney’s complaint.
Chancy asserted claims of breach of contract and fraudulent misrepresentation against Johnson and Johnson Properties; a claim of “interference with access easement/intentional violation of [Chancy’s] property rights” against the Association and each of the members of the Association; and claims of continuing trespass, nuisance, invasion of her right to privacy, and the tort of outrage against all the parties named in her complaint. Chancy also sought injunctive relief and a judgment declaring that Chancy had an easement by adverse possession, by prescription, by necessity, or by implication.
The members of the Association, Brad Wiggins, Kathleen Wiggins, Cedric Butler, Bridgette Butler, Joseph A. Wolf, Cathee W. Wolf, Roger P. Traywick, Andrea Tray-wick, Scott Post, Brent Post, Christy C. Post, and Buffi Post (hereinafter sometimes collectively referred to as “the Association members”), and the Association filed a number of separate and joint answers to Chancy’s complaint. On April 4, 2008, Johnson filed an answer to the complaint and a motion to dismiss; on June 5, 2008, the trial court entered an order granting Johnson’s motion to dismiss on Chancy’s claim of the tort of outrage.
The Association members and the Association filed a number of separate and joint summary-judgment motions. A number of the Association members filed affidavits in support of those motions.
Kathleen Wiggins stated in her affidavit that she and her husband, Brad, had purchased Lot 1 of the Chancy Lake subdivision from Olivia Post in April 2005. Bridgette Butler filed her affidavit, in which she stated that she and her husband, Cedric, had purchased Lot 2 of the Chancy Lake subdivision on August 8, 2007, from Keith Wheeler and Heather Wheeler and that the Butlers’ deed had contained an “erroneous legal description” because it included a “thirty (30) foot easement for ingress/egress.” She stated that Johnson and/or Johnson Properties had executed a “Corrective Deed” on November 1, 2007, which changed the type of easement that existed on their property from an easement for ingress/egress to a “thirty (30) foot drainage easement.”
Joseph A. Wolf filed an affidavit in which he stated that he and his wife, Ca-thee, had purchased Lot 3 of the Chancy *292 Lake subdivision from Rick Church in October 2006 and that the deed to their property contains a 20-foot drainage easement, although, he stated, it is his “understanding that this is incorrect and has been corrected by Johnson Properties, LLC.” He further stated that the gate controlling access to the Chancy Lake subdivision had already been installed and was functional at the time they purchased their lot.
Roger Traywick and his wife, Andrea, stated in their respective affidavits that they had purchased Lot 5 of the Chancy Lake subdivision from Johnson Properties in April 2004. Scott Post and his wife, Christy, both stated in their respective affidavits that they had purchased Lot 6 of the Chancy Lake subdivision from the Traywicks in September 2005. Brent Post and his wife, Buffi, both stated in their affidavits that they had purchased Lot 7 of the Chancy Lake subdivision from Johnson Properties in May 2005.
Each of the Association members asserted that they had not made any contracts or agreements with Chancy regarding the purchase of their lots or any future use or restriction on the use of their properties or common areas in the subdivision and that, at the time they purchased their respective lots, the Declaration had already been prepared. Additionally, they asserted that their deeds did not contain an easement allowing Chancy to cross them property or other subdivision property and that they had not altered the drainage of Chancy Lake, which is located within the subdivision.
Johnson Properties filed an answer on September 22, 2008. Also on September 22, 2008, Johnson and Johnson Properties filed a joint motion for a summary judgment. On September 23, 2008, Johnson Properties filed an amended answer and a counterclaim against Chancy.
On October 15, 2008, Chancy filed a response to the summary-judgment motions filed by the Association members and the Association.[1] In that response, Chancy conceded that those parties were entitled to a summary judgment on her claims of breach of contract, fraudulent misrepresentation, invasion of her right to privacy, and the tort of outrage. With regard to her claim of “interference with access easement/intentional violation of [Chancy’s] property rights,” Chancy asserted that an easement had been properly created by the Declaration, that the Amendment did not properly extinguish or revoke the easement, and, thus, that the movants’ assertions to the contrary were without merit. Chancy argued, therefore, that whether the movants’ revocation of the easement was a proper termination of the easement created a genuine issue of material fact. Chancy also asserted that there was a genuine issue of material fact regarding whether the blocking of the easement was proper. Chancy attached her affidavit, in which she stated that she had not approved the Declaration.
On September 30, 2008, Chancy filed an answer to the counterclaim filed by Johnson Properties. Also on September 30, 2008, Chancy filed a response to Johnson and Johnson Properties’ summary-judgment motion.
On February 24, 2009, the trial court entered a summary judgment in favor of the Association, the Traywicks, and all the Posts (sometimes hereinafter referred to *293 collectively as “the Association appellees”) on all counts in Chancy’s complaint. On March 11, 2009, the Butlers filed a motion for a ruling on their summary-judgment motion. Chancy filed a motion to alter, amend, or vacate the trial court’s summary judgment in favor of the Association appel-lees on March 11, 2009. The Association appellees filed a response to Chancy’s motion to alter, amend, or vacate the summary judgment on March 16, 2009. The Wolfs filed a response to Chancy’s motion to alter, amend, or vacate on March 17, 2009.[2]
Chancy filed an amended complaint on March 23, 2009. The Butlers filed an amended answer on March 24, 2009. The Association appellees filed a motion to dismiss Chancy’s amended complaint or, in the alternative, for a judgment on the pleadings on March 27, 2009. On that same date, the Association appellees filed an answer to Chancy’s amended complaint and a motion to dismiss the amended complaint. The Wolfs filed an answer to Chancy’s amended complaint on March 30, 2009.
On June 5, 2009, the trial court entered an order denying Chancy’s motion to alter, amend, or vacate the summary judgment entered in favor of the Association appel-lees; granting the summary-judgment motions filed by the Wolfs, the Wigginses, and the Butlers; denying Johnson and Johnson Properties’ summary-judgment motion; and granting the motions to dismiss Chancy’s amended complaint filed by the Wolfs and the Association appellees. On June 25, 2009, the Butlers filed a motion to dismiss Chancy’s amended complaint or, in the alternative, for a judgment on the pleadings. On June 25, 2009, Chancy filed a motion for certification of the summary judgments pursuant to Rule 54(b), Ala. R. Civ. P., and a motion to stay the proceedings at the trial-court level; those motions were granted by the trial court on July 13, 2009.
Chancy filed her notice of appeal to the Alabama Supreme Court on August 13, 2009; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.

Standard of Review

“A party is entitled to a summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. ‘Our standard of review in cases involving summary judgments is de novo.’ Lee v. Burdette, 715 So.2d 804, 806 (Ala.Civ.App.1998). ‘In reviewing the disposition of a motion for [a] summary judgment, we utilize the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact’ and whether the movant ‘is entitled to a judgment as a matter of law.’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c)(3), Ala. R. Civ. P. ‘[I]f the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden ... shifts to the non-movant; ... the non-movant must show “substantial evidence” in support of his position.’ Bass v. SouthTrust Bank, 538 So.2d 794, 798 (Ala.1989). Evidence is ‘substantial’ if it is ‘of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989). Our review is further subject to the caveat that this court must *294 review the record in a light that is most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).”
Prince v. Wal-Mart Stores, Inc., 804 So.2d 1102, 1103-04 (Ala.Civ.App.2001).

Discussion

Chancy argues on appeal that the trial court erred by entering a summary judgment in favor of the Association and the Association members, on her claims of interference with her access easement, intentional violation of her property rights, trespass, and nuisance and on her claims seeking a declaratory judgment and in-junctive relief. Because Chancy does not appeal the summary judgment in favor of the Association and the Association members (hereinafter sometimes collectively referred to as “the appellees”) on her claims of breach of contract, fraudulent misrepresentation, invasion of the right to privacy, and the tort of outrage, we affirm the trial court’s summary judgment as to those claims.
With regard to the remaining claims of interference with her access easement, intentional violation of her property rights, nuisance, and trespass and on her claims seeking a declaratory judgment and in-junctive relief, Chancy asserts on appeal that she had been expressly conveyed an easement via the Declaration and that that easement was never properly terminated. Thus, Chancy argues that there remains a genuine issue of material fact regarding whether the Association members’ attempt to revoke the easement by recording the Amendment was a proper termination of her easement and that, therefore, summary judgment was improper.
In Bruner v. Walker, 366 So.2d 695, 696-97 (Ala.1978), the Alabama Supreme Court stated:
“It has been long recognized that one who purchases land subject to, or with notice of, an easement, takes the estate subject to the easement. Brown v. Alabama Power Co., 275 Ala. 467, 156 So.2d 153 (1963); Scheuer v. Britt, 217 Ala. 196, 115 So. 237 (1928). This principle is intended to prevent the purchaser from escaping his obligation to honor an easement which, in good conscience, he is bound to respect. It is not intended to create an estate in land but rather to protect and enforce the rights of a party in an already existing estate. Therefore, to invoke this principle, it must be affirmatively shown that a valid easement actually existed and that the purchaser took the land either subject to, or with notice of, the easement.”
Alabama law has recognized that an easement may be created by contract. See Cleek v. Povia, 515 So.2d 1246 (Ala.1987) (holding that an oral agreement to create an easement was enforceable). In McCarthy v. Nicrosi, 72 Ala. 332 (1882), the Alabama Supreme Court determined that an easement had been created by a written contract between the parties that stipulated that a sewer should be constructed at the joint expense of the parties. An easement was created in favor of the owner of the upper lot to allow the water to drain across the lower lot. Id.
In the present case, Chancy and Johnson stipulated in the Agreement, a written contract signed by both Chancy and Johnson, that Johnson would ensure access to Chancy’s adjoining property through the subject property. Thus, Johnson purchased the subject property subject to an access easement. See Bruner, supra. In turn, Johnson recorded the Declaration, which referred in Article X to an “easement for ingress/ingress” in favor of Chancy’s adjoining property.
*295 To the extent that the appellees[3] assert that an easement was not created by the Declaration, we look to this court’s discussion of “the proper interpretation of agreements creating licenses or easements” in Blackburn v. Lefebvre, 976 So.2d 482, 489-91 (Ala.Civ.App.2007):
“First, ‘ “[t]he construction of a written document is a function of the court.” ’ Jehle-Slauson Constr. Co. v. Hood-Rich, Architects & Consulting Eng’rs, 435 So.2d 716, 720 (Ala.1988) (quoting Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1194 (Ala.1978)). ‘In the absence of fraud or mistake, it is only where the instrument is doubtful of meaning, or its language ambiguous, that the court may look beyond the “four corners” of the instrument to give clarity and specificity of meaning.’ Camp v. Milam, 291 Ala. 12, 16-17, 277 So.2d 95, 98 (1973); see also David Lee Boykin Family Trust v. Boykin, 661 So.2d 245, 251 (Ala.Civ.App.1995) (‘The substantive rules governing licenses are the same as those governing contracts.’).
“The critical factor in determining whether parties created an easement or a license is the parties’ intent. James v. Brewster, 954 So.2d 594, 600 (Ala.Civ.App.2006) (citing Boyce v. Cassese, 941 So.2d 932, 941 (Ala.2006)). In determining whether the parties created an easement or a license, we also look to the surrounding circumstances. See Drummond Co. v. Walter Indus., Inc., 962 So.2d 753 (Ala.2006) (citing Jon W. Bruce and James W. Ely, Jr., The Law of Easements & Licenses § 11:1 (West 2001)).
“Concerning the distinction between easements and licenses, we note that, on the one hand, ‘[n]onpossessory property rights such as covenants and easements are said to “run with the land,” becoming an incident of ownership, and they are generally not personal.’ Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 159 (Ala.2000). In contrast, ‘[a] license denotes the “giving of one’s consent” to do or perform a specified activity; a license is a personal privilege and is generally revocable at the will of the licensor.’ Wehby v. Turpin, 710 So.2d 1243, 1251 (Ala.1998) (citing Camp v. Milam, 291 Ala. at 17, 277 So.2d at 99).
“Our supreme court has adopted the following language of Jon W. Bruce & James N. Ely, Jr., The Law of Easements & Licenses in Land § 11:1 (West 2001), to explain the distinction between easements and licenses and the factors to consider when determining the nature of the interest created by the parties:
“ ‘ “§ 1:4 — Fundamental difference
“ ‘ “A license is often defined as permission to do an act or a series of acts on another’s land that, absent authorization, would constitute trespass. Because permission is the voluntary grant of a personal privilege, the landowner may usually revoke consent at any time and thereby terminate the license. Given their revocable nature, licenses generally are not considered to reach the status of interests in land. In contrast, easements are irrevocable interests in land of potentially perpetual duration.
“ ‘ “Several distinctions flow from this fundamental difference. An express easement must be in writing to satisfy the Statute of Frauds; a license may be, and often is, given orally. Easement holders are entitled to protection from interference from third parties; licensees generally are not. Most easements are transier *296 able; licenses are not transferable unless the parties intended otherwise.
“ ‘ “§ 1:5 — Intent of parties
“■‘“All of the legal distinctions between easements and licenses mentioned in the preceding section only hint at how one can decide which right was created. The critical factor is the parties’ intent. The following elements are important in ascertaining intent:
“1 “1. Manner of creation of right (oral or written). The mere granting of a right in writing does not automatically render it an easement. ... [M]ore is required to create an easement. The existence or absence of words that are ‘ordinarily used in the conveyances of real estate’ is an important factor. The label that the parties give the right, however, does not dictate its legal effect. For example, a right called a lease may in reality be an easement or a license.
“ ‘ “2. Nature of right created. The creation of a right to be used in a particular portion of the servient estate indicates that an easement was intended. Likewise, the existence of authority in the holder of the right to maintain or improve the burdened property suggests an easement.
“ ‘ “3. Duration of right. A set duration indicates an easement. A grant in perpetuity also indicates an easement. Further, an express provision that the right benefits its holders’ successors and assigns supports the conclusion that an easement was intended. Similarly, an easement is indicated if the right expressly binds the servient landowner's successors and assigns. Conversely, the deletion of words of succession may indicate a license. Finding an easement, however, does not depend upon the existence of ‘magic words such as “successors and assigns.” ’
“ ‘ “4. Amount of consideration, if any, given for right. Substantial consideration indicates an easement. In this regard, it is necessary to distinguish consideration given for the right from money expended in reliance upon the right. An ‘irrevocable license’ may result from expenditures made in reliance on an existing license.
“ ‘ “5. Reservation of power to revoke right. An express reservation of the power to cancel, revoke, or terminate the right may be considered to indicate a license. However, a power to terminate in the landowner does not necessarily mean that a license was created. Specifying a power to terminate for a particular reason or in limited circumstances may be seen as inconsistent with the unabridged right to revoke retained by one who grants a license. Moreover, an easement may be expressly subject to termination by the servient owner upon the occurrence of a specified event.” ’
“Boyce v. Cassese, 941 So.2d at 941-42 (emphasis added).”
Based on the discussion in Blackburn, we conclude that the Declaration created an easement in favor of Chancy. The Declaration is a written document that indicates that the covenants therein will run with the land and be binding. The Declaration also references an “easement for ingress/egress” as recorded on the plat for the Chancy Lake subdivision, which indicates that it is an interest in land, rather than permission to perform certain acts thereon. Moreover, to the extent that *297 the conditions for modification or termination of any of the provisions in the Declaration outlined in Article XI conflict with the intent to create a binding easement expressed in Article X and thereby create an ambiguity, reference to the Agreement indicates that Johnson’s intent was to create a binding easement.
The appellees assert that, to the extent the Declaration created an easement in favor of Chancy, that easement was subject to Article XI of the Declaration and, thus, the Amendment properly terminated that easement. Chancy argues, however, that the easement could not be terminated by the Amendment. We agree with Chancy-
 “ ‘An easement, although an incorporeal right, ... is yet properly denominated an interest in land, ... and the expression “estate or interest in lands” is broad enough to include such rights; for an easement must be an interest in or over the soil.’ ” West Town Plaza Assocs., Ltd. v. Wal-Mart Stores, Inc., 619 So.2d 1290, 1295 (Ala.1993) (quoting Oates v. Town of Headland, 154 Ala. 503, 505, 45 So. 910, 911 (1908)). A landowner cannot convey a greater interest in property than he possesses. See Benefield v. Benefield, 953 So.2d 418, 425 (Ala.Civ.App.2006) (where widow possessed a life estate, her purported conveyance of the property in fee simple to her son was ineffective; she conveyed only her life estate); Bonner v. Pugh, 376 So.2d 1354, 1357 (Ala.1979) (when a person who has only a life estate purports to transfer an estate greater than the life estate, his or her conveyee acquires, as against the owner of a future interest in such land, no right, privilege, power, or immunity greater than those possessed by the conveyer).
By virtue of the Agreement, Johnson owned an interest in the subject property that was subject to the easement in favor of Chancy. The Agreement did not assign any limitations to the easement, and, thus, Johnson did not possess a right to limit the easement without Chancy’s consent. See Romar Dev. Co. v. Gulf View Mgmt. Corp., 644 So.2d 462, 465 (Ala.1994) (“[BJeeause [the] contract created the easement, that contract also defines the extent of the easement.”). Because Johnson could not convey a greater interest in the subject property than he possessed, he could not convey the subject property with the limitation imposed by Article XI of the Declaration, which provided a manner of modifying or terminating the easement without Chancy’s consent. See Ex parte Folsom, 42 So.3d 732 (Ala.2009) (where easement was not ambiguous and granted rights over an area of real property, owner of servient estate was not entitled to unilaterally modify the terms of the easement), and West Town Plaza, 619 So.2d at 1296 (“‘The owner of the servient estate must abstain from acts interfering with the proper enjoyment of the easement by the owner of the dominant estate....’” (quoting Brown v. Alabama Power Co., 275 Ala. 467, 470, 156 So.2d 153, 154 (1963))). We conclude, therefore, that to the extent Article XI of the Declaration attempted to limit the easement, that provision of the Declaration is void.[4] We conclude also that the Amendment did not terminate the easement and that Chancy maintains an easement across the subject property.
*298 Although we conclude that Article XI of the Declaration did not act to limit the easement, we note that the conveyance of the easement without limitation in the Declaration remains valid. “As this Court has held before, ‘an ineffectual attempt to convey a greater estate or interest would not invalidate the conveyance of that property conveyable.’ Francis v. Sandlin, 150 Ala. 588, 587, 48 So. 829, 830 (1907).” Ex parte Powell, 763 So.2d 230, 233 (Ala.1999).
Because we conclude that Chancy possesses an express easement across the subject property, we reverse the trial court’s summary judgments in favor of the appellees on Chancy’s claims of interference with her access easement and intentional violation of her property rights and her claim seeking injunctive relief, each of which are dependent on her possession of an express easement. Additionally, our determination that Chancy possesses an express easement obviates the need to address her argument that the trial court erred by entering summary judgments in favor of the appellees on her claim seeking a declaratory judgment, which requested only a declaration that Chancy possessed an easement by adverse possession, by prescription, by necessity, or by implication and a judicial determination as to the rights and responsibilities of the parties concerning the easement.
Chancy last argues on appeal that the trial court erred in entering summary judgments in favor of the appellees on her claims of nuisance and trespass. Those claims both rely on Chancy’s assertion that a lake exists in the middle of the Chancy Lake subdivision and that the appellees have intentionally altered or interfered with the natural drainage of that lake, causing it to drain through the easement reserved in favor of Chancy and onto Chancy’s adjacent property. The appel-lees argue that Chancy has presented no substantial evidence indicating that the ap-pellees have caused drainage onto her property or that damage has resulted therefrom; the appellees submitted affidavits stating that they had not taken any actions to interfere with the natural drainage of Chancy Lake onto Chancy’s property-
Chancy cites Johnson’s affidavit, which states that Johnson Properties began construction of a surface-water retention pond after purchasing the subject property, and she concedes that Johnson is the party that altered the natural flow of drainage from Chancy Lake. She asserts, however, that each current lot owner, i.e., the Association members, owns a portion of the lake and that they have made no effort to halt or correct the artificial flow of water toward Chancy’s adjacent property.
Chancy cites Carlton v. Hollon, 4 So.3d 439 (Ala.2008), for the proposition that the lot owners may be held liable for failing to correct the drainage when they have had reasonable time to correct the condition. In Carlton, Carlton and Hutchinson owned real property adjacent to property owned by the Hollons. 4 So.3d at 440. Carlton and Hutchinson sued the Hollons and the previous owner of the Hollons’ property, the Webbs, alleging that, when the Webbs owned the property, the Webbs had removed timber and made changes to the surface of their property, which had altered the natural water drainage onto Carlton’s and Hutchinson’s property. Id. at 440-41. Although the Hollons testified that they had not cut any timber or otherwise altered the surface of their property, the Alabama Supreme Court determined that “a landowner may be held liable for failing to correct a condition on the landowner’s property that was created by the previous landowner when that condition causes injury to an adjacent landowner’s property, and the current landowner has *299 had a reasonable time to correct the condition.” Id. at 443. See also Sloss Sheffield Steel & Iron Co. v. Nance, 216 Ala. 237, 113 So. 50 (1927).
In her affidavit, Chancy stated that she had never observed anyone attempting to make any improvements to limit or remedy the damage to her property caused by the drainage of the lake. Based on Carlton, we conclude that a genuine issue of material fact exists regarding Chancy’s claims of trespass and nuisance such that summary judgment was improper. We therefore reverse the trial court’s judgments with regard to those claims.

Conclusion

We affirm the trial court’s summary judgments with regard to Chancy’s claims of breach of contract, fraudulent misrepresentation, invasion of the right to privacy, and the tort of outrage and her claim seeking a declaratory judgment against the appellees. We reverse the trial court’s judgments with regard to Chancy’s claims of interference with her access easement, intentional violation of her property rights, nuisance, and trespass and her claim seeking injunctive relief, and we remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. Chancy had filed a response to the summary-judgment motions of some of the Association members and the Association on September 29, 2008. On October 15, 2008, she filed an amended response that addressed the summary-judgment motions of each of the Association members and the Association.

. The trial court had not entered a ruling on the Wolf's summary-judgment motion at the time they filed their response to Chancy's postjudgment motion.

. We note that the Wigginses have not filed an appellees' brief.

. We note that Article XII of the Declaration applies and this court’s decision does not invalidate any other provision of the Declaration, that Article XI remains in full force and effect with regard to the remaining articles of the Declaration, and that the Amendment remains in full force and effect with regard to any remaining changes to the Declaration made therein.