RENDERED: SEPTEMBER 28, 2017
TO BE PUBLISHED

## Supreme Court of Kentucky

FINAL

2016-SC-00213-DG    DATE 10/19/17 Kim Redmon, DC

MAJESTIC OAKS HOMEOWNERS                    APPELLANT
ASSOCIATION, INC.

ON REVIEW FROM COURT OF APPEALS
V.                     CASE NO. 2014-CA-000492
SHELBY CIRCUIT COURT NO. 2009-CI-00873

MAJESTIC OAKS FARMS, INC., JOSEPH           APPELLEES
O'BRIEN AND ASHLYN O'BRIEN

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

Kentucky law confirms the possibility of a *defeasible easement*, although

the term itself appears in no reported case describing this type of easement,

which is an easement capable of termination upon the occurrence of a specified

event or contingency. In this case, Majestic Oaks Homeowners Association

(HOA) contends the defeasible easement principle applies to the easement for

ingress and egress retained by its subdivision's developer, Majestic Oaks Farms

(Developer), to terminate it when a majority of HOA members voted to do so, as

allowed by the express terms of Developer's recorded subdivision plat. On

discretionary review, we agree with HOA.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In 1995, Developer began developing a residential subdivision, Majestic Oaks Equestrian Estates (Estates). To memorialize Developer's and future homeowners' rights in Estates, Developer recorded with its subdivision plat a declaration of covenants, conditions, and restrictions (Original Declaration) and incorporated its terms into the homeowners' deeds to lots in the development. The Original Declaration accomplished two noteworthy things.

First, the Original Declaration created Developer's easement in gross, stating, "[Developer] shall have a superior right and easement in gross [to use Estates's private roads]...for so long as [Developer], its successors or assigns, owns any Lot or any portion of the Property." The Original Declaration defined *Lot* as "any Lot which is part of the Property." *Property* was defined as "Lots 1-23 as shown on the above referenced Plat." Additional lots could be added as part of Property, according to the following language: "[Developer] intends to make this section containing 23 lots a part of a larger community known as [the Estates], having been developed in accordance with current plan. Subsequent additional plats will be recorded in the office of the Shelby County Clerk's Office."

Second, § 8.3 of the Original Declaration, the other section at the center of this dispute, states:

> *Unless cancelled, altered or amended* under the provisions of this paragraph, these *covenants and restrictions* are to run with the land and shall be binding on all parties claiming under them...unless an instrument signed by a majority of the then owners of all lots subject to these restrictions has been recorded

2

*agreeing to change these restrictions and covenants* in whole or in part. These *restrictions may be cancelled, altered or amended* at any time by a 67% approval from each class of membership subject to these restrictions, *but Developer shall retain the sole right* to appoint the architectural approval committee until the last lot is sold.[1]

In 1998 and 2000, Developer expanded Estates to include Lots 24-59, identified as "Sections 2 and 3," by recording a plat. The plat for Section 3 also identified a section of land for "Future Development," identified as "Sections 4 and 5." By this time, Estates included Lots 1-59, identified as "Sections 1-3." By March 13, 2006, Developer no longer owned any property in the Estates, having transferred Sections 1-3 to individual homeowners within the HOA through a quitclaim deed, but continued to own Section 4. Section 4 did not become part of Estates until April 2008, two years after all of Developer's then-existing property in the Estates was originally conveyed.

In August 2006, HOA proposed amendments to the Original Declaration to be voted on by the homeowners, proposing two relevant changes: (1) to expand "Property" to include Lots 1-59, i.e. Sections 1-3 of the Estates; and (2) to remove the language granting an easement in gross to Developer. The amendment to remove this language passed with 82% approval, well above the 67% required by the Original Declaration. [2]

---

[1] Emphasis has been added to highlight the important language.
[2] Because we ultimately conclude that Developer's easement was expressly made terminable and that the easement terminated when the HOA membership voted decisively in August 2006, we consider Developer's argument of the possible legal effect of its continued ownership of Section 4—the effective date of its inclusion in Property being disputed—is not a material fact that precludes summary judgment in favor of HOA.

3

Believing the easement to be ineffective, HOA filed suit in circuit court against Developer to stop Developer's continued use of the purportedly terminated easement in gross because of the adoption by HOA of the amendment to the Original Declaration and the relinquishment by Developer of any ownership rights in "Property." Both parties filed summary judgment motions against each other, with the trial court granting Developer's motion and a panel of the Court of Appeals affirming. We granted HOA's motion for discretionary review.

## II. ANALYSIS.

### A. Standard of Review.

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law."[3] "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue de novo because only legal questions and no factual findings are involved."[4]

### B. The Possessory Interest Granted to Developer was a Defeasible Easement in Gross that Terminated Upon a Greater Than 67% Vote, Sufficiently Fulfilling a Condition for Termination Stated in the Written Document Granting the Easement.

An easement "is an incorporeal hereditament to which corporeal property is rendered subject."[5] In other words, it is the right to use the land owned by

---

[3] *Coomer v. CSX Transp., Inc.,* 319 S.W.3d 366, 370 (Ky. 2010) (citing *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App. 1996)).

[4] *Id.* at 370-71 (citing *Hallahan v. The Courier-Journal,* 138 S.W.3d 699, 704 (Ky. App. 2004)).

[5] *Illinois Cent. R.R. Co. v. Roberts,* 928 S.W.2d 822, 826 (Ky. App. 1996) (citing *Henry Bickel Co. v. Texas Gas Transmission Corporation,* 336 S.W.2d 345, 347 (Ky. 1960).

4

someone else for a specified purpose. "An easement in gross is a mere personal interest in or right to use the land of another. It is attached to and vested in, the person to whom it is granted."[6] "[T]he principal distinction between an easement in gross and an easement appurtenant is that in the first there is not, and in the second there is, a dominant tenement to which it is attached."[7] "An express easement is created by a written grant with the formalities of a deed."[8]

There is no question in this case that whatever right Developer has in the real property it conveyed to HOA of an express easement in gross. And the disagreement between the parties rests on whether that express easement in gross is legally capable of termination and whether HOA actually terminated it.

A defeasible easement is one that "terminate[s] upon the occurrence of a given event."[9] "[A]n easement may be expressly subject to termination by the servient owner upon the occurrence of a specified event or contingency."[10] "Where an easement has been created until the happening of a specific event or contingency, the easement will terminate ipso facto on the happening of the specified event or contingency."[11]

---

[6] *Meade v. Ginn*, 159 S.W.3d 314, 320 (Ky. 2004).
[7] *Id.*
[8] *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012).
[9] Jon W. Bruce and James W. Ely, Jr., The Law of Easements & Licenses in Land, § 10:3 (1988).
[10] 25 Am. Jur. 2d *Easements & Licenses* § 84 (2014).
[11] *Id.*

5

Kentucky has never formally recognized the term *defeasible easements*. But two cases confirm the existence of defeasible easements in Kentucky.[12] In *Kenner*, the Court stated:

> The doctrine is well-settled at common law that no freehold or fee-simple estate can be destroyed by the breach or non-performance of a condition subsequent...This common-law rule does not apply, however...to the creation of mere easements. [A]n incorporeal hereditament is not created at common law by livery of seizin; and whenever the breach of a subsequent condition happens in an estate or grant of this character the estate terminates without any entry.[13]

Ascertained from the language above, this Court recognized the existence of defeasible easements in Kentucky in *Kenner*.

In *Otter*, the entire discussion of the Court centered on whether an easement purporting to end when a water storage tank owner "remove[d] said tank" ended when the owner simply replaced the tank.[14] The Court could not have even entertained this discussion had it not assumed the recognition of defeasible easements in Kentucky. So according to *Kenner* and *Otter*, Kentucky recognizes the existence of defeasible easements, easements ending upon the occurrence of a given event. Although this dispute involves two such events, termination of the easement upon vote of the individual homeowner members of the HOA conclusively decides this matter.

---

[12] *Kenner v. American Contract Co.*, 72 Ky. 202 (Ky. 1872); *Louisville Chair & Furniture Co. v. Otter*, 294 S.W. 483 (Ky. 1927).
[13] *Kenner*, 72 Ky. at 207-08.
[14] *Otter*, 294 S.W. at 483-87.

6

"In the case of an express easement...the terms of [an easement] determine the rights and liabilities of the parties."[15] "[B]ecause [the] contract created the easement, that contract also defines the extent of the easement."[16] A trial court "commit[s] an error when it [goes] outside the easement agreement to ascertain extraneously its meaning and effect, because the result [is] an interpretation of the instrument inconsistent with the clear and definite language employed in it."[17]

Taking these rules together, the extent of Developer's rights as to its easement is confined by the very language it chose in retaining that easement. The Original Declaration states, "These restrictions may be cancelled, altered or amended at any time by a 67% approval from each class of membership subject to these restrictions, but [Developer] shall retain the sole right to appoint the architectural approval committee until the last lot is sold." No dispute exists as to the procedural validity of the vote itself—both parties agree that the vote was conducted properly. So, because the existence of Developer's easement is limited by its granting language in the Original Declaration, and

---

[15] *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012) (citing *Tex. E. Transmission Corp. v. Carman*, 314 S.W.2d 684, 687 (Ky. 1958)).

[16] *Chancy v. Chancy Lake Homeowners Association*, 55 So.3d 287, 297 (Ala. Civ. App. 2010) (citing *Romar Dev. Co. v. Gulf View Mgmt. Corp.*, 644 So.2d 462, 465 (Ala. 1994)). *Chancy*, although only persuasive authority, is the subject of much debate between the parties and lower courts. The lower courts seem to have missed an important factual distinction between *Chancy* and this case that shows that *Chancy* does not in fact support Developer's position. The *Chancy* court did not allow the homeowners' association in that case to amend the easement because *Chancy*'s easement-granting document did not contain any sort of limitation or amendment language. *Chancy*, 55 So.3d at 297. Rather, in this case, the Original Declaration, the easement-granting document, allows for the amending of the "restrictions" of the Original Declaration.

[17] *Texas Eastern Corp. v. Carman*, 314 S.W.2d 684, 687 (Ky. 1957).

7

because HOA validly abided by the procedure necessary to remove that easement, HOA extinguished Developer's easement.

Developer argues that HOA's ability to amend the Original Declaration is confined to "restrictions," and not "covenants and restrictions," per the language used in § 8.3 of the Original Declaration. And Developer argues that the term *easement* does not fit under the umbrella of either "covenants" or "restrictions."

Black's Law Dictionary, specific to property law, defines *affirmative covenant* as "[an] agreement that real property will be used in a certain way."[18] An *easement* constitutes a covenant because an easement, as stated earlier, is an interest that can be created by an agreement and that allows a landowner to use land that he or she does own for a specific purpose. So an *easement* falls under the *covenants* umbrella in the Original Declaration.

To Developer's point, it is true that this Court would be hard-pressed to refer to any easement, besides a negative easement, as a *restriction*. But the language of § 8.3 of the Original Declaration, in addition to interpretative canons, supports our conclusion that an *easement* falls under the *restrictions* umbrella of the Original Declaration.

The applicable section, § 8.3, begins by stating, "*Unless cancelled, altered or amended* under the provisions of this paragraph, these *covenants and restrictions* shall be binding....*" This opening language implies nothing less than covenants, and thus easements, are amendable. The language of § 8.3 ,

---

18 Black's Law Dictionary (10th ed. 2014).

8

also states, "...unless an instrument signed by a majority of the then owners of all lots subject to these restrictions has been recorded agreeing to change these *restrictions and covenants* in whole or in part." Again, this language implies that covenants are amendable.

The section then describes an amendment-voting process: "These *restrictions may be cancelled, altered or amended* at any time by a 67% approval from each class of membership subject to these restrictions, but *Developers shall retain the sole right* to appoint the architectural approval committee until the last lot is sold." We read this language more as a description of the amendment process than as a limitation on what can be amended, considering the entirety of the section.[19] Even more in support of this reading is the discussion of Developer's "sole *right* to appoint the architectural approval committee...." If Developer truly intended to restrict application of the amendment process only to "restrictions," it would not have included, in the same sentence, a discussion of Developer's "rights," Developer's rights including the use of the easement. Additionally, § 8.3 is located under Art. VIII – General Provisions in a document entitled "Declaration of Covenants, Conditions and Restrictions." So this amendment provision seemingly generally applies to the ability of HOA to amend covenants, conditions, and restrictions.

---

[19] *Vansant v. Commonwealth*, 224 S.W. 367, 371 (Ky. 1920) ("the meaning of a word may be ascertained by reference to the meaning of words associated with it").

Lastly, this Court follows the contract interpretation canon historically known by the useful Latinism, *contra proferentem.* When interpreting contracts susceptible to two meanings, we construe ambiguity against the drafter, Developer in this case.[20] If Developer wanted its easement to be indefeasible, it could have simply included a provision stating, "Nothing in this document will allow the amendment, alteration, or extinguishment of Developer's easement." This would have prevented anyone from arguing that Developer's easement is amendable, and thus, terminable.

So Developer's defeasible easement terminated upon a vote by the membership of HOA, in accordance with the Original Declaration. The trial court improperly granted summary judgment to Developer and the panel of the Court of Appeals improperly affirmed the trial court. We hold from these facts that HOA was entitled to judgment as a matter of law and the trial court erred when it failed to grant HOA's summary judgment motion.

## III.    CONCLUSION.

We reverse the holding of the Court of Appeals and remand this case to the trial court with directions to enter summary judgment in favor of Majestic Oaks Homeowners Association.

Minton, C.J.; Cunningham, Hughes, Keller, Venters and Wright, JJ., sitting. All concur. VanMeter, J., not sitting.

---

[20] *B. Perini & Sons v. Southern Ry. Co.*, 239 S.W.2d 964, 966 (Ky. 1951).

10

COUNSEL FOR APPELLANT:

John C. Robinson
Robinson Salyers, PLLC

Brad Keeton
Matthew Kuhn
William M. Lear Jr
Stoll Keenon Ogdon, PLLC


COUNSEL FOR APPELLEE, MAJESTIC OAKS FARMS, INC.:

Paul Anton Zimlich
Paul A. Zimlich, PLLC

COUNSEL FOR APPELLEES, JOSEPH O'BRIEN AND ASHLYN O'BRIEN:

Austin Hays
Austin Hite Hays, PLLC.

John B. Baughmam
Baughman Harp, PLLC.