RENDERED: JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0133-DG

PHOENIX AMERICAN ADMINISTRATORS,　　　　　　　　　　APPELLANTS
LLC, AND PHOENIX AMERICAN
WARRANTY COMPANY, INC.

　　　　　　　　　　ON REVIEW FROM COURT OF APPEALS
V.　　　　　　　　　　　　NO. 2019-CA-1154
　　　　JEFFERSON CIRCUIT COURT NO. 18-CI-003290

CURTIS LEE　　　　　　　　　　　　　　　　　　　　　　APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**AFFIRMING**

This Court granted the petition of Phoenix American Administrators, LLC and Phoenix American Warranty Company, Inc. (collectively referred to as "Phoenix") for review of the Court of Appeals' opinion reversing the Jefferson Circuit Court's grant of summary judgment in favor of Phoenix. This case concerns a contract dispute in which Plaintiff Curtis Lee seeks to recover damages from Phoenix, the administrator of a guaranteed asset protection ("GAP") waiver addendum entered into by Lee in the course of purchasing and financing a motor vehicle. While we agree with the Court of Appeals that summary judgment was prematurely granted, we write to clarify some issues and instruct the trial court how to proceed on remand.

## I.    Factual and Procedural Background

In 2014, Lee purchased a used Kia Optima from the Kia Store East in Louisville.  Lee financed the purchase by obtaining a $20,919 loan from Regional Acceptance Corporation ("Regional") as lender and lienholder on the automobile, with the loan payable in installments over 72 months (6 years). Simultaneously, Lee paid $750 for what is commonly known as gap insurance. The gap insurance that Lee purchased was administered by Phoenix, a Florida company.  The contract administered by Phoenix was titled "GAP Waiver Addendum" and provided:

> In the event of a total loss of the vehicle described above . . . Dealer [the Kia Store] and the Assignee/Lienholder/Lessor [Regional] agree to waive all sums, which represent the difference between the actual cash value of the vehicle and the outstanding balance under the provisions of the Financial Agreement.

The GAP Waiver Addendum was entered into by and between the Buyer/Lessee (Lee) and the Dealer (Kia Store East) and the Assignee/Lienholder/Lessor (Regional).  Lee and an authorized representative (presumably of Regional) both signed the contract.  At the top and bottom of the front page of the GAP Waiver Addendum, Phoenix is listed as the program administrator.

The second/back page of the GAP Waiver Addendum sets forth the requirements for seeking and obtaining a waiver under the addendum as follows:

> **CLAIMS PROCEDURES – IT IS YOUR RESPONSIBILITY TO KEEP YOUR ACCOUNT CURRENT UNTIL CLAIM REVIEW IS COMPLETE.**

2

In the event of a total loss, you shall promptly provide the following documentation to the Program Administrator at the address shown below. All copies must be complete and legible. Any claim must be submitted within one hundred twenty (120) days from the date of total loss of the vehicle or total loss payment you received from your primary insurer, whichever is longer. Any claim submitted after the one hundred (120) days period is void.

(1) Completed GAP Claim Form.
(2) A copy of the applicable primary insurance policy and declaration sheet clearly indicating coverages and deductibles.
(3) A copy of the primary insurance company claim settlement check(s) and/or settlement statement.
(4) A copy of the police report made for the incident if applicable. Such report shall include the date of loss, the vehicle mileage as of the date of loss, and the circumstances involved in the total loss.
(5) A copy of the original Financial Agreement, proof of the proceeds recovered from cancellation of refundable items, and a copy of the GAP Waiver addendum.
(6) Documentation detailing the outstanding balance as of the date of loss and a statement regarding any past due amount(s) or other charge(s), if any. You shall also provide any other reasonable documentation requested by us necessary to complete your claim.

Under the definitions section on the second/back page of the GAP Waiver Addendum, it states:

**Assignee/Lienholder/Lessor** means any financial institution providing financing for the purchase of the Vehicle and/or this GAP Waiver Addendum.

**Dealer** means the Vehicle Dealer identified on the front page of this GAP Waiver Addendum.

**I, Me, You, and Your** means the Buyer/Lessee of this GAP Waiver Addendum.

**Us** means Phoenix American program administrator.

About three years after purchasing his car, in September 2017, another driver caused a wreck that totaled Lee's Kia. At the time of the accident, Lee had approximately three years of car payments left, totaling $19,000. The

value of his Kia at the time of the accident was $8,000. The at-fault driver's car insurance company, Safe Auto, paid Regional, the lienholder, the fair market value of the Kia ($8,000) on November 9, 2017. That payment left Lee owing a balance of $11,000 to satisfy his loan obligation to Regional. Lee's GAP coverage from Phoenix theoretically was meant to cover this balance, but a dispute arose as to Lee's claim.

Lee and Phoenix disagree about the facts surrounding Lee's GAP claim. Because the primary insurer, Safe Auto, paid for the total loss on November 9, 2017, Lee had until March 9, 2018 (120 days later) to make a claim. Lee alleges that he contacted Phoenix by phone within a few weeks of the accident to notify the company of his claim and obtain the GAP Claim Form, but that he did not receive it until March 21 or 22, 2018. According to Phoenix, it did not hear from Lee in the weeks after the accident and first learned of it on February 15, 2018, when informed by Regional. Phoenix states that the next day, it mailed Lee a letter listing all the documentation he needed to provide to make a claim, advising him of the 120-day deadline, and providing a copy of the claim form he needed to complete and return. After receiving no response, Phoenix says it re-sent the letter a month later, on March 16, 2018. According to Phoenix, Lee contacted it on March 19, 2018 (130 days after total loss payment) and advised of a new address. During that phone conversation, Phoenix states that it explained what documents were missing and re-sent Lee the letter, this time to the new address.

4

On March 29, 2018, Phoenix received Lee's faxed Claim Form and some, but not all, of the documents listed in the "Claims Procedures" section. Lee submitted (1) a completed claim form, (2) a primary insurance claim settlement check, and (3) a primary insurance claim settlement statement but did not submit (1) his primary insurance policy, including declarations, (2) his insurer's evaluation report, (3) the police report, (4) the financing agreement, (5) a vehicle service contractor cancellation refund check, (6) a copy of the GAP Waiver Addendum, (7) documentation of the outstanding balance on the financing agreement, or (8) documentation of his payment history. Phoenix denied Lee's claim as untimely because he did not submit the required documentation within the requisite time period.

Thereafter, Lee sued Phoenix for breach of contract. Phoenix later moved for summary judgment, which the trial court granted. First, the trial court found that despite Phoenix's assertion, privity of contract existed between the parties. The trial court reasoned that Lee was a third-party beneficiary of the separate, underlying contract between Phoenix and Regional; in other words, Phoenix's obligation to administer the GAP Waiver for Regional would be for the benefit of Lee. Accordingly, the trial court found Lee had standing to assert an action against Phoenix for breach of contract as a third-party beneficiary of the contract between Phoenix and Regional. Further, the trial court observed that while Lee's counsel had provided additional documents nearly a year after 120-day period expired, indisputably, Lee still had not provided all the documents

required to support his claim for GAP coverage.[1]  Because Lee failed to comply with the terms of the GAP Waiver Addendum in making his claim, the trial court found that no genuine issues of material fact existed as to whether a breach occurred and granted summary judgment in Phoenix's favor.

Lee appealed, and a somewhat divided Court of Appeals panel concluded that summary judgment was improper and reversed the trial court.[2]  Unlike the trial court, the Court of Appeals believed that the GAP Waiver was ambiguous as to what was necessary to submit a claim.  Looking at the plain language of the GAP Waiver, that court observed that submitting a claim and providing supportive documents could be interpreted as two distinct acts because the GAP Waiver set different timeframes for each.  Specifically, the GAP Waiver required claimants to "promptly" notify Phoenix with the listed documents.  On the other hand, the GAP Waiver required "claim[s to] be submitted within one hundred twenty (120) days."  Since Phoenix drafted the document, the appellate court construed the ambiguous language against it and in so doing found that a claim was submitted under the GAP Waiver when the car owner notified Phoenix that a total loss occurred.  Because a factual dispute existed as to when Lee first notified Phoenix that his Kia was totaled, the court determined summary judgment was improper.

---

[1] On February 13, 2019, Lee's counsel provided a copy of Lee's Safe Auto Insurance Policy Declarations and the Buyer's Order for the purchase of the purchased vehicle.

[2] The opinion was written by now-Justice Kelly Thompson, with Judges Dixon and Acree concurring in result only.  The opinion was designated not to be published.

6

The Court of Appeals also *sua sponte* considered the GAP Waiver's document-submission requirements. It found that by November 2017, Regional, Phoenix's principal, had all the information necessary to review Lee's claim and because most of the other documents required by the Claims Procedure were irrelevant, the GAP Waiver's document-submission requirements were oppressive and unconscionable. Lastly, the Court of Appeals refused to address Phoenix's privity-of-contract argument on grounds that the argument was not properly before the court because Phoenix failed to file a cross-appeal. Phoenix filed a petition for discretionary review with this Court, which we granted.

## II. Standard of Review

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.

*MGG Inv. Grp. LP v. Bemak N.V., Ltd.*, No. 2021-SC-0561-DG, S.W.3d 2023 WL 2622736, at *3 (Ky. Mar. 23, 2023)[3] (quoting *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (internal citations and quotation marks omitted)). Similarly, "[t]he interpretation of a contract, including determining whether a

---

[3] Finality. Apr. 13, 2023.

contract is ambiguous, is a question of law to be determined *de novo* on appellate review." *Maze v. Bd. of Dirs. for Commonwealth Postsecondary Educ. Prepaid Tuition Tr. Fund*, 559 S.W.3d 354, 363 (Ky. 2018).

### III.   Analysis

Phoenix argues that the Court of Appeals misinterpreted the GAP Waiver, wrongly considered the information known by Regional, improperly deemed the document-submission requirements unconscionable, and erroneously held that the privity-of-contract argument was unpreserved.

As a threshold matter, the Court of Appeals erred by not addressing the merits of Phoenix's privity argument. As the prevailing party in the trial court, Phoenix was not required to file a cross-appeal to preserve its alternate arguments. *Commonwealth Fin. & Admin. Cabinet v. Wingate*, 460 S.W.3d 843, 847 (Ky. 2015) (citing *Corrections Cabinet v. Vester*, 956 S.W.2d 204, 205–06 (Ky. 1997) ("[w]here the prevailing party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention[]")).

That said, the trial court correctly held that privity of contract existed between Phoenix and Lee. Privity of contract is defined as

> [t]he relationship between parties to a contract, allowing them to sue each other but preventing a third party from doing so. Thus, [o]rdinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute or, under certain circumstances, by a third-party beneficiary. Consequently, [a]s a general rule,

8

whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto.

It is well established that a third person may, in his own right and name enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. But, [n]ot every contract will give one who is not privy thereto a right of action therein, even though such third party might have received a benefit from the completion of the contract. Only a third-party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right.

*Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (internal quotations and citations omitted). "One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary." *Sexton v. Taylor Cnty.*, 692 S.W.2d 808, 810 (Ky. App. 1985). "In order to be either a donee or creditor beneficiary, it must be proven that the contract in question was made for the actual and direct benefit of the third party." *Id.*

Phoenix argues no privity of contract existed since it was not a party to the GAP Waiver Addendum and Lee was not a party to its contract with Regional. Whether Phoenix was a party to the GAP Waiver Addendum is borderline; Phoenix makes a good point that it was not expressly identified as a party, and did not sign the contract, but from the GAP Waiver's appearance, it

9

certainly, appears as if Lee was purchasing GAP coverage from Phoenix.

Regardless, Lee was a third-party beneficiary of the contract between Phoenix and Regional, in which Phoenix undertook an obligation to administer GAP claims for individuals who purchased GAP Waivers, including Lee. Because Lee was one of the intended beneficiaries of Phoenix's administrative obligations, the trial court correctly ruled that Lee had standing to maintain a breach of contract action against Phoenix.

As to whether genuine issues of material fact exist, no one disputes what documentation Lee provided to Phoenix, or when he provided it. However, the date when Lee first contacted Phoenix is at issue, as Lee claims he called the company within weeks of the accident and was told he would receive documents in the mail. Conversely, Phoenix's position is that Lee never phoned. For purposes of summary judgment, we must view the record in a light most favorable to Lee and presume that he did in fact call Phoenix to advise it of his claim in a timely manner. Lee tendered an affidavit to this effect, while Phoenix proffered no evidence of its own, just pleadings filed by counsel.

The issue then becomes whether Lee's phone call was sufficient for purposes of submitting his claim pursuant to the GAP Waiver's contractual terms. If insufficient, then the timing of his call is irrelevant. The trial court found that any phone call would have been insufficient by itself since the GAP Waiver requires Lee to provide his completed claim form and the other documents listed within 120 days. The Court of Appeals disagreed, finding a

10

distinction in the contract between submitting a claim and providing supporting documentation. Specifically, the GAP Waiver states that "[i]n the event of a total loss, you shall promptly provide the following documentation to the Program Administrator at the address shown below." The term "promptly" is not defined, nor is it clear that all the documents must be "provided" before the claim can be considered "submitted." It appears that a claimant must first contact Phoenix to report the total loss, then await receiving a "GAP Claim Form" before being able to fill it out and return it. As the Court of Appeals observed, if a claimant does not receive a claim form in a timely manner after having reported a total loss, the claimant could be precluded from "promptly provid[ing]" the necessary documents, as the claim form is the very first document listed.

After identifying the documents required by the claimant, the GAP Waiver states that "[a]ny claim must be submitted within one hundred twenty (120) days from the date of the total loss of the vehicle or total loss payment you received from your primary insurer, whichever is longer" and "[a]ny claim submitted after the one hundred twenty (120) day period is void." A "claim" or what constitutes a claim being "submitted" is not defined. Still, Phoenix asserts that the contract language is clear: a claimant must provide notice to Phoenix of the claim, await a claim form, complete and return the form, and provide all the other listed documents within 120 days for a claim to be timely.

The Court of Appeals found the language to be ambiguous, even if interpreted as Phoenix insists. That court noted Phoenix's interpretation does

11

not delineate between "claims" which are to be "submitted within 120 days" and the supporting "documents" which are thereafter to be "promptly provid[ed]."

> A basic rule of contract interpretation requires that preference be given to the interpretation which gives a reasonable, lawful, and effective meaning to all the terms over a reading which leaves a part unreasonable, unlawful, or of no effect. Moreover, in the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations. If the language is ambiguous, the court's primary objective is to effectuate the intentions of the parties.

*Maze*, 559 S.W.3d at 363 (internal quotations and citations omitted). "When interpreting contracts susceptible to two meanings, we construe ambiguity against the drafter[.]" *Majestic Oaks Homeowners Ass'n, Inc. v. Majestic Oaks Farms, Inc.,* 530 S.W.3d 435, 441 (Ky. 2017).

Construing the ambiguous contract against Phoenix, the drafter, the Court of Appeals concluded that a claim was submitted under the GAP Waiver when the car owner notified Phoenix that a total loss had occurred. Because a factual dispute existed as to when Lee first notified Phoenix that his Kia was totaled, the court held that summary judgment was improper. We agree. Looking at the plain language of the GAP Waiver, submitting a claim and providing supportive documents could be interpreted as two distinct acts because the GAP Waiver sets different timeframes for each: the GAP Waiver requires claimants to "promptly" provide Phoenix with the listed documents,

but also requires "claim[s to] be submitted within one hundred twenty (120) days."

Moreover, neither Phoenix nor Regional questioned the validity of Lee's claim. By November 2017, Regional had accepted Safe Auto's check for the Kia. By that time, Regional knew (1) an accident had occurred, (2) Lee's Kia was totaled, (3) Safe Auto was the primary insurer, (4) the amount Safe Auto paid was appropriate, and (5) Lee was current on his loan payments and otherwise compliant with the Financing Agreement. Whether Regional and Phoenix were operating under a "principal-agency" relationship, or whether information known to Regional can be imputed to Phoenix, in theory, the two entities were, or should have been, working together to process individuals' claims of total loss and GAP coverage. The document-submission process should not be designed to defeat consumers' legitimate claims and make it as hard as possible for consumers to reap the benefit of the GAP Waiver – a benefit they paid $750 to obtain. The absurdity of requiring Lee to produce documents that are already in Regional's or Phoenix's possession (a copy of the Financing Agreement and GAP Waiver) underscores this point. However, we need not definitively rule on whether the GAP Waiver's document-submission requirements were oppressive and unconscionable (issues the Court of Appeals *sua sponte* raised) to conclude that the trial court's grant of summary judgment was premature.

13

## IV.     Conclusion

For the foregoing reasons, we affirm the Court of Appeals and remand this case to the trial court with instructions to vacate its order granting summary judgment and allow Lee's breach of contract action to proceed.

Vanmeter, C.J.; Bisig, Conley, Keller, Lambert and Nickell, JJ., sitting. All concur.  Thompson, J., not sitting.

COUNSEL FOR APPELLANTS:

Erin Celeste Sammons Izzo
Clayton Daniel Scott
Leslie Patterson Vose
Landrum & Shouse, LLP


COUNSEL FOR APPELLEE:

Timothy Rutherford McCarthy
Nutt Law Office

14