RENDERED: FEBRUARY 20, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0054-DG

JESSICA HILL                                           APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-0203
JEFFERSON CIRCUIT COURT NO. 21-CI-005320

STATE FARM MUTUAL AUTOMOBILE            APPELLEES
INSURANCE COMPANY AND TYLER
DELONJAY

**OPINION OF THE COURT BY JUSTICE BISIG**

**<u>REVERSING AND REMANDING</u>**

This case involves the interpretation of an insurance contract and addresses a significant civic question-- does a minor child in the sole legal custody of one parent qualify as a "resident relative" under the custodial parent's insurance policy if the child is staying elsewhere at the time of an automobile accident. Seventeen-year-old Tyler Delonjay ("Tyler") had a motor vehicle accident in Jefferson County, Kentucky in August of 2020. Tyler struck another vehicle and the Appellant, Jessica Hill ("Ms. Hill"), suffered injuries and lost a pregnancy. Tyler, pursuant to a family court order, was in the sole legal custody of his father, Jason Delonjay ("Jason"), for nine uninterrupted years leading up to this collision. Further, there is no factual dispute that Tyler was not physically staying with his father for several months when the

accident occurred. Tyler's mother was homeless and had not exercised custody since 2011. Tyler lived with his father from 2011 to May of 2020. Tyler was listed as a "dependent" on his father's 2020 income taxes. Tyler's driver's license, court documents and employment records listed his father's address as his own.

Despite these facts, because of disputes between father and son, Tyler was staying with his father's sister, Suzanne Small (Aunt Suzanne) and/or various friends at the time the accident occurred. Tyler borrowed his Aunt Suzanne's vehicle and was driving with permission when he drove into Ms. Hill's car. Tyler's father had a policy with State Farm that provided insurance coverage if Tyler qualified as a "resident relative" defined as one who "resides primarily" with the named insured. The policy did not define the terms "resident," "resides" or "primarily." The issue is whether residency as used in the insurance contract meant legal domicile or actual physical residence. There is no dispute that father had legal authority over his minor son. Under Kentucky law, an unemancipated minor child (even a seventeen-year-old) cannot be without a home or guardian. There are mechanisms found in various statutes for the state to intercede if a minor were found to be abandoned, and the child would be referred to the Cabinet for Health and Family Services. KRS[1] 600.020; KRS 342.075; KRS 530.060.

Hill sued for damages resulting from the collision. In brief opinions, the trial court granted summary judgment in favor of State Farm denying coverage

---

[1] Kentucky Revised Statute.

and the Court of Appeals affirmed the decision. The Court of Appeals affirmed the trial court finding the language of the policy clear and unambiguous. It also cited to evidence that Tyler was not living at his father's house when the accident occurred. The Court of Appeals erroneously reasoned that Tyler not physically living at his father's residence the date of the accident was the controlling factor in determining judgment in favor of State Farm. It construed the policy language "primarily resides" as clear proof the policy intended physical presence. Notably, in its analysis, the Court of Appeals did not mention Tyler's status as a minor or the family court custody orders.

In *State Automobile Insurance Company v. Reynolds,* 32 S.W.3d 508 (Ky. 2000) this Court discussed issues regarding a minor child's legal status even when not physically living at home. Per the logic in *Reynolds,* even though Tyler was not residing with his father, some form of early emancipation did not render him *sui juris. Id.* at 510 (citing *Bensinger's Coex'rs v. West,* 255 S.W.2d 27, 28 (Ky. 1953)). In *Perry v. Motorists Mutual Insurance Company,* 860 S.W.2d 762 (Ky. 1993) this Court outlined guidance for determining residency. The *Perry* court considered whether the individual was physically living in the parents' home as evidence, but not the sole controlling factor to establish residency. *Id.* at 764. While the phrase "resident relative" was not at issue in *Perry,* the analysis included consideration that there was no definition in the Motorist Mutual policy for the term "resident" and that ambiguous terms must be resolved in favor of coverage. *Id.* at 765.

3

For the 105 months of his life prior to the accident, Tyler lived with his father. For 3 months immediately preceding to the accident, he lived at various friends and his aunt's. Accordingly, 97% of the time in the last 9 years, Tyler lived with his father. This coupled with the family court sole-custody order, his status as a minor, income taxes, job application, traffic ticket, and other documentation result in a strong argument Tyler was "primarily" residing with father. At minimum, the term "resident relative" is ambiguous as applied to these facts. To wit, State Farm could have clearly defined "resident" in the policy to mean "a person who physically resides in your household." It did not.

When interpreting the residency language in an automobile insurance policy, it is foreseeable for both insurer and insured that this type of issue may unfold. It is a societal norm that families can find themselves embroiled in difficult adolescent-parent relationship dynamics. While this specific legal question is novel, other cases acknowledge the fluid and complicated nature of residency in the timeframe surrounding emancipation. *Old Reliable Ins. Co. v. Brown,* 558 S.W.2d 190, 191 (Ky. App. 1977). Importantly, the law does not allow a minor child to be deemed as having "no residence" simply because they leave a parental home for some period to avoid conflict.

Under the specific facts here, the Court finds the policy language was unclear. When a term in a contract is ambiguous, courts construe the language against the drafter of the policy. *Majestic Oaks Homeowners Ass'n, Inc. v. Majestic Oaks Farms, Inc.,* 530 S.W.3d 435, 441 (Ky. 2017). Ambiguous insurance terms should be construed to favor insurance coverage rather than

4

restrict it. *Perry*, 860 S.W.2d at 765. Accordingly, we find the policy language was ambiguous and therefore should be interpreted in favor of the insured. The judgments of the trial court and Court of Appeals are hereby reversed, and the case is remanded for the trial court to enter summary judgment on behalf of Appellant, Jessica Hill.

## FACTS AND PROCEDURAL BACKGROUND

This case arises out of a tragic August 5, 2020, automobile accident on Bardstown Road in Jefferson County. Ms. Hill sustained serious injuries after Tyler's vehicle struck her from the opposite direction on the driver's side door. As a result of the accident, Ms. Hill filed suit in Jefferson Circuit Court against the driver Tyler, vehicle owner Aunt Suzanne, Tyler's father Jason, and State Farm. As part of the claims in the lawsuit, Ms. Hill requested declaratory judgment under KRS 418.040 regarding coverage under Jason's State Farm Insurance policy. The case discovery included depositions of Tyler, Jason and Aunt Suzanne. Further, the parties agree that Tyler left his father's home sometime around May 2020 and was staying with Aunt Suzanne at the time of the accident in August 2020.

Tyler was born in September of 2002. He lived with both of his parents for about two years. Tyler then resided with his mother until 2011. Tyler's mother subsequently became homeless, and Tyler moved in with his father at 1010 Reasor Avenue in Louisville. By a family court order dated March 30, 2011, Jason was given primary custody of Tyler with mother having visits every other weekend. From the issuance of that order in 2011 (including a

5

subsequent order affirming in 2013) through the date of the accident in 2020, the order remained unchanged.

By all accounts, Tyler and his father had a difficult relationship, and Tyler left the home on Reasor Avenue because of their differences. Ultimately, Tyler's father contacted the police regarding Tyler's whereabouts. Tyler was picked up by police and taken to Our Lady of Peace in Louisville. The staff of Our Lady of Peace contacted Tyler's aunt and she was willing to pick him up and allowed him to stay with her. After that, Tyler stayed with his aunt off and on and he also stayed with some friends. Despite staying other places, at the time of the accident, Tyler's driver's license listed his father's address as his home. In November of 2020, Tyler listed his father's address for a speeding ticket he received. He also listed his father's address as part of a UPS job application process as late as August 2021. Jason listed Tyler as a dependent on his 2020 income tax return and gave deposition testimony that he provided the aunt with weekly money for Tyler's food. It is undisputed that at the time of the accident, Tyler was an unmarried, unemancipated dependent minor son of Jason.

For its part, Appellee State Farm argues that Aunt Suzanne disputed that she received money from Tyler's father for necessities. It notes that after Tyler left his father's residence, the father and his partner repurposed Tyler's former bedroom as a guest room or his sister started using the space as a closet. State Farm argues when Tyler ultimately procured his own apartment with a friend several months after the accident, that his father sold him the

6

furniture from his old room.  State Farm notes that Tyler used his aunt's address on the hospital papers the evening of the accident.  It also notes from deposition testimony that Tyler did not intend to move back in with his father.  Both father and aunt's testimony equivocated regarding Tyler's ultimate return to Reasor Avenue.

Following the period of discovery in circuit court, Ms. Hill moved the trial court for summary judgment against State Farm.  State Farm filed a cross-motion for summary judgment.  The trial court granted State Farm's motion for summary judgment and denied Ms. Hill's motion.  In a 2-sentence order, the trial court found as follows: "State Farm Mutual Automobile Insurance Company has no duty to indemnify, Tyler Dejonjay for the claims and litigation arising from the August 5, 2020, motor vehicle accident."  There was no factual or legal basis provided in the order.  Ms. Hill filed a motion to amend this order to include the necessary final and appealable language which the trial court granted.

Ms. Hill timely filed a notice of appeal in January of 2024.  The Court of Appeals issued an opinion affirming the trial court's award of summary judgment in favor of State Farm.  In its opinion, the Court of Appeals acknowledges that "residence" may mean legal domicile or actual residence. *Burr's Adm'r v. Hatter,* 240 Ky. 721, 43 S.W.2d 26, 27 (1931); *Brown,* 558 S.W.2d at 191; *Perry,* 860 S.W.2d at 764.  Further, it acknowledged the court should look to what could reasonably be expected by the insured given the language of the insurance policy.  *Foreman v. Auto Club Prop.-Cas. Ins. Co.,* 617

7

S.W.3d 345, 349-50 (Ky. 2021). The opinion construed "resident relative" as used in the policy to mean actual physical domicile. Despite the lack of definitions in the policy of the terms "resident", "reside" or "primarily", the Court of Appeals found the term "resident relative" was unambiguous and that the evidence showed Tyler was not primarily residing with his father when the accident occurred. This Court granted discretionary review in June of 2024.

## STANDARD OF REVIEW AND ANALYSIS

We review a trial court's ruling on a motion for summary judgment *de novo*. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014) ("Because summary judgments involve no fact finding, this Court will review the circuit court's decision *de novo*.") (quoting *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky.2005)). In addition, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03.

---

[2] Kentucky Rule of Civil Procedure.

8

## A. The term "resident relative" was ambiguous, and the law requires the language to be construed in favor of coverage.

We find that the trial court and Court of Appeals erred in finding the term "resident relative" as used in the State Farm policy was clear and unambiguous. While at face-value, these terms seem capable of clear understanding, the fact that Tyler was a minor child adds a complicated layer to the interpretation. By law, a minor child cannot be "in the wind" with no home or residence. Pursuant to KRS 2.015, Tyler was a minor child at the time of the accident. By statutory definition, an abandoned minor is abused or neglected. KRS 600.020(1)(a). Tyler was not emancipated either by marriage or court order and Jason continued to owe him an ongoing duty of care. Therefore, as previously stated herein, case law acknowledges the term residence could be viewed as a legal domicile or actual physical residence. *Burr's Adm'r,* 450 S.W.2d at 27; *Brown,* 558 S.W.2d at 191. Here, although Tyler may have stayed with his Aunt Suzanne, she had no guardianship or other legal authority over Tyler. As such, Tyler's legal domicile was with his father. The relevant provisions of Jason's State Farm Policy state as follows:

> The **Definitions** section at pages 4-6, includes the following definitions relevant to the issue presented:
>
> ***Non-Owned Car*** means a ***car*** that is in the lawful possession of ***you*** or any ***resident relative*** and that neither:
>
> 1. is ***owned*** by:
>    a. ***you***;
>    b. any ***resident relative***;
>    c. any other ***person*** who resides primarily in ***your*** household; or
>    d. an employer of any ***person*** described in a., b., or c. above; or

9

2. has been operated by, rented by, or in the possession of:
    a. **you**; or
    b. any **resident relative** during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or **loss**.

**Resident Relative** means a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a **person** described in 1. Above.

**You** or **Your** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a **person**, then "**you**" or "**your**" includes the spouse of the first **person** shown as a named insured in the spouse resides primarily with that named insured.

Beginning on page 6, under the **Liability Coverage** section, the policy states:

**Additional Definition**

**Insured** means:

1. **you** and **resident relatives** for:
    a. the ownership, maintenance, or use of:
        (1) **your car**;
        (2) a **newly acquired car**; or
        (3) a **trailer**; and
    b. the maintenance or use of:
        (1) a **non-owned car**; or
        (2) a **temporary substitute car**;

10

2. the first **person** shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a **car** that is **owned by**, or furnished by an employer to, a **person** who resides primarily in **your** household, but only is such **car** is neither **owned by**, nor furnished by an employer to, the first **person** shown as a named insured on the Declarations Page or that **person's** spouse;

3. any other **person** for his or her use of:
   a. **your car**;
   b. a **newly acquired car**;
   c. a **temporary substitute car**; or
   d. a **trailer** while attached to a **car** described in a., b., or c. above.

4. any other **person** or organization vicariously liable for the use of a vehicle by an **insured** as defined in 1., 2., or 3. Above, but only for such vicarious liability. This provision applies only if the vehicle is neither **owned by**, nor hired by, that other **person** or organization.

Equipped with the policy language, we apply the express terms to Tyler. First, there can be no doubt that as a biological son, Tyler was Jason's relative and related to the named insured. Second, the policy defines a "resident relative" to mean Tyler "resides primarily" with his father. As previously stated, in the 9 years preceding the accident, Tyler lived at father's home 97% of the time. It cannot be ignored that the rights and responsibilities Jason had over Tyler remained in place at the time of the accident. The Court finds unpersuasive State Farm's argument that Tyler was "close to 18" as he plainly had not reached the age of majority when the accident occurred.

Similarly, State Farm argues Jason testified he thought it would be best for Aunt Suzanne to assume primary legal guardianship for Tyler. Even if

11

Jason believed transferring custody to someone else was a good idea, this falls far short of removing his custodial responsibilities. Jason had not taken the necessary steps to transfer legal custody of his son to his sister. At the time of the accident, both the 2011 and 2013 family court orders gave Jason sole custody. Accordingly, given Tyler's age and the order of sole custody from family court reasonable minds could clearly differ regarding import of the phrase "resident relative" in the policy.

It is noteworthy that "resides primarily with" as used in the policy contemplates the relative may not be present in the home 100% of the time. One who is living "primarily" in one place is also staying some portion of the time in another place. This raises a query regarding how long away from home changes one's legal residency. It is reasonable to assume this time would be different for a minor than an adult. As an example, the policy specifically provides when a minor is "away at school" they are still considered to be a resident relative. Here there is an analogous situation in that the facts demonstrate a minor who was "away at another family member's home" because of a dispute over household rules. The *Perry* court stated that a person may have more than one place of residence at any given time and maintain a permanent residence even though he or she may live elsewhere temporarily. 860 S.W.2d at 765. The term "resides" could be interpreted to mean the state of having legal custody over another. State Farm's argument may be more persuasive if the policy defined "resident" as actual physical presence in the home. In *Moses v. Baker,* 798 F.Supp.2d 863, 865 (E.D.Ky.

12

2011) a similar Allstate Insurance policy defined "resident" as "a person who physically resides in your household with the intention to continue residence there." The State Farm policy here had no such language. For these reasons, the Court finds the policy's use of "resident relative" and "resides primarily" ambiguous.

Because these terms are ambiguous, the law requires that the undefined terms should be construed against the drafter of the policy. *Majestic Oaks*, 530 S.W.3d at 441. In *Perry*, the court observed that "generally an ambiguous term must be construed in such a manner as to favor insurance coverage rather than to restrict it." 860 S.W.2d at 765. Ambiguous terms in an insurance contract are strictly construed against the insurer so as not to defeat the policyholder's reasonable expectation of coverage. *Foreman*, 617 S.W.3d at 349-50. When looking at language in insurance contracts, courts in Kentucky are guided by two cardinal principles: "(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Ky. Farm Bureau Mut. Ins. Co., v. McKinney,* 831 S.W.2d 164, 166 (Ky. 1992) (citations omitted). Applied here, these basic rules of insurance contract interpretation require the language capable of multiple meanings to be resolved in favor of coverage.

**B. Actual physical residence on the date of the accident, while relevant, is not the controlling factor in determining coverage, and the issues raised here were entirely foreseeable by State Farm.**

The Court finds that lower courts' sole consideration of actual physical residence incomplete. While this is one factor listed in our jurisprudence, we must consider other issues as well. The *Perry* case provides guidance as to the appropriate considerations for a court deciding the issue of legal residency. In *Perry,* the Court considered whether an 18-year-old adult daughter was a resident of her father's home at the time of her death for the purpose of coverage under a Motorist Mutual Policy. 860 S.W.2d at 764. The daughter was tragically killed in a one-car traffic incident. *Id.* The court's primary consideration in *Perry* was whether the issue of residency presents a question of fact or law. *Id.* In *Perry,* the daughter was both 18 and recently married. *Id.* Her administrator brought a suit for underinsured benefits against father's insurance. *Id.* Justice Wintersheimer immediately noted that the policy did not define the term "resident." *Id.* The *Perry* Court in examining the policy noted that the question of residency is often difficult and that each individual case should be considered based upon the facts. *Id.* (citing *Burr's Adm'r, 53 S.W.2d* at 26). There were several witnesses that testified the daughter and her husband were only staying away at an aunt's home temporarily. *Id. at 765.* Importantly, the court also noted that "[a] person may have more than one residence at any given time and maintain a permanent place of residence even though he or she may live elsewhere temporarily." *Id.* Ultimately, the court determined there were disputed facts which would render summary judgment

14

inappropriate, but reinstated the trial court verdict that the daughter was a resident of her father's home for the purposes of the insurance policy. *Id.*

In *Perry*, the court did not deem controlling the issue of whether the 18-year-old daughter had been physically living in her father's home in the weeks leading up to the accident. The Court also looked to testamentary and documentary evidence and ultimately found the lack of definition of the term "residence" in the policy rendered it ambiguous and that the ambiguity must be resolved in a manner to favor coverage. *Id.* This logic applies more strongly here because, unlike the adult daughter in *Perry*, Tyler was a minor.

In *Reynolds*, a court of appeals decision not binding on this Court, the court considered whether a 17-year-old driver who caused an automobile accident was a minor within the meaning of KRS 186.590(3) which would make her father liable. 32 S.W.3d at 508. While somewhat different than the issues facing this court, the child also had moved away from her parent's home following disagreement over rules. *Id.* at 509. The child moved in with an older sister and supported herself with income from a part-time job. *Id.* The court considered her status and found although supporting herself and living elsewhere may have made her emancipated for some purposes, it failed to change her legal status as a minor for the purpose of holding her father liable. *Id.* at 511. This same logic applies to Ms. Hill's claims against State Farm. Tyler's living away did not change his legal status as a minor child under the ultimate responsibility of Jason.

In *Brown*, the issue concerned whether the parent of a child was a resident of the same household to be covered under the language of the daughter's automobile insurance policy. 558 S.W.2d 190. The daughter's policy had a "family protection coverage" clause. *Id.* at 191. The court considered similar factors such as the daughter leaving the parental home in Brandenburg, Kentucky. *Id.* In addition, the court considered that the daughter had moved to another state, rented her own apartment, lived away for over a year, and was not dependent on her parents for support. The Court of Appeals found the trial court erred in finding mother was a resident in the same household as her daughter. *Id.*

None of the *Brown* conditions existed for Tyler. First, he still lived in Louisville and did not move away. Next, Tyler was underage and therefore did not rent his own apartment or purchase his own home. Tyler was gone from his father's home weeks or months, not over a year. He continued to use the Reasor Avenue address on important documents and his father continued to list him as a dependent. While there are factors in favor of State Farm such as testimony from his deposition that he did not intend to return to his father's home, Jason and Aunt Suzanne's statements regarding future plans for Tyler were less clear.[3] Aunt Suzanne gave testimony that Jason intended Tyler to continue living with him. Tyler gave his Aunt Suzanne's address in the

---

[3] We pause here to note that Ms. Hill objected to the court considering deposition testimony regarding Tyler's intent concerning returning to live in his father's home. Hill argues that as a minor, the family court orders regarding custody, and not his opinion, should control. This Court considers Tyler's testimony as competent and relevant as part of the *Perry* factors.

16

hospital the evening of the accident. In consideration of these issues, we concede that Tyler was not physically living under his father's roof at the time of the automobile accident. For the purposes of this analysis, we assume all of the arguments of State Farm are true; however, the factors still weigh in favor of coverage.

The Court of Appeals opinion cites to *Burr's Adm'r* noting that a legal residence may mean legal residence or domicile, or an actual residence where one may be temporarily abiding, yet wholly fails to apply this guidance to consider Tyler's status in this case. The *Burr's Adm'r* court went on to state that "what is or was one's residence often presents a difficult question." 43 S.W.2d at 27. They determined that courts should consider both facts and intention. *Id.* Specifically, the person's intention to abandon a former domicile and to establish a new one. *Id.* Here, while Tyler's intent to be away from his father's home was clear, he had not taken steps to establish a new one. He was staying with others.

Both lower court opinions did not look comprehensively at the important issues raised by this case. As previously noted, the trial court gave no factual or legal basis for its decision. Conversely, the Court of Appeals briefly outlined some factors such as Tyler's personal belongings being with him, his own testimony that he did not wish to return, and that he only returned to Reasor for holidays and birthdays. Yet critically, the analysis did not consider or mention Tyler's status as minor at the time of the accident. The opinion did not analyze the import of the family court orders giving sole custody of Tyler to

17

Jason or the fact that Tyler had been in Jason's custody for 9 uninterrupted years.

Finally, as in the case of minors leaving home for school, a difficult adolescent/parent relationship is a reasonably foreseeable circumstance to both insurer and insured. This is important both for the insured's expectation of coverage, and the insurers responsibility to clearly set terms and conditions in a contact. Interestingly, the *Brown* court noted "'floating intentions' are typical of the recently emancipated young adult." 558 S.W.2d at 191. The analysis here should include consideration of the insured's expectation of coverage for one's minor children. While interpreting the specific language of this policy, the court should also consider what could reasonably be expected by the insured given the language of the contract. *Foreman*, 617 S.W.3d at 350. It is not surprising that parents and adolescents have conflict. Even children who reach the age of majority are often in and out of a parent's home as they are getting started on their path in life. For these reasons, this Court holds the terms as used in the State Farm contract ambiguous and finds in favor of coverage.

## CONCLUSION

For the foregoing reason we reverse the Court of Appeals and the trial court granting summary judgment in favor of State Farm. This Court hereby orders the case remanded to the trial court with instructions to enter summary judgment in favor of Jessica Hill as a matter of law finding coverage and indemnity are available for Tyler, as an insured, under the State Farm policy.

18

Lambert, C.J.; Bisig, Conley, Keller, Nickell, Thompson, JJ., sitting. All concur. Goodwine, J., not sitting.

COUNSEL FOR APPELLANT:

Marvin L. Coan
David L. Sage, II
Hummel Coan & Sage LLC

COUNSEL FOR APPELLEE, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY:

David T. Klapheke
Paige E. Hornback
Dinsmore & Shohl LLP

COUNSEL FOR APPELLEE, TYLER DELONJAY:

Brian H. Stephenson
C. Michael Van Sickle
Ward, Hocker, & Thornton, PLLC