RENDERED:  AUGUST 22, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0788-MR

THOMAS JASPER STRAUSE                                  APPELLANT

               APPEAL FROM JEFFERSON CIRCUIT COURT
v.                HONORABLE JENNIFER WILCOX, JUDGE
               ACTION NO. 22-CI-004898

BRADFORD GROVE HOMEOWNERS
ASSOCIATION, INC.; INESSA
MARDOSKY; LAURA HEADY;
LINDA WOOD; LORI HASSLER;
MARANDA SKAGGS; RACHEL
MIGIROV; AND STEVE
SCHUMACHER                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

CALDWELL, JUDGE:  Thomas Jasper Strause ("Strause") appeals from the grant of summary judgment for the defendants in his declaratory judgment action challenging the denial of his request to put up a six-foot fence on his property.  We affirm.

# FACTS

Strause owns a home in the Bradford Grove subdivision in Jefferson County, Kentucky. Bradford Grove is a deed-restricted community administered by the Bradford Grove Homeowners Association, Inc. ("HOA"). Strause took title to his property subject to Bradford Grove's governing documents, which include: 1) a publicly recorded Declaration of Covenants, Conditions & Restrictions ("Declaration") and amendments thereto; 2) the By-Laws of the HOA; and 3) Rules and Regulations governing the details of Bradford Grove's operation.

As Strause points out, Bradford Grove's governing documents do not contain any specific prohibition against six-foot fences. However, provisions in the Declaration establish that Bradford Grove homeowners cannot alter or erect fences and other structures on their properties without the approval of the HOA, acting through its Board.

Strause retained counsel after the Board denied his request to replace a four-foot picket fence on his property with a six-foot privacy fence. As Strause emphasizes, approximately eighteen other homes in Bradford Grove had six-foot fences at the time of his request—including two Board members' homes.[1] Some

---

[1] The record indicates there were 18.5 six-foot fences at the time of Strause's request, but that one fence was removed during litigation—resulting in 17.5 existing six-foot fences at the time the trial court granted summary judgment.

fences or other structures were admittedly approved by the Board when it was comprised of different individual members, including one period in which the Board had only one member. Other fences had been erected without the owners' seeking the Board's approval at all.

The Board declined to take steps to force the removal of pre-existing six-foot fences and other structures it deemed incompatible with Bradford Grove's purported "village charm." However, the Board sent letters to Bradford Grove homeowners a few months prior to Strause's request indicating that new six-foot fences would not be approved to preserve or restore village charm.

Strause filed suit against the HOA and the individual members of the Board. Strause sought a declaratory judgment authorizing him to build a six-foot fence on his property. He also sought an award of punitive damages.

The defendants filed an answer and the parties engaged in discovery. Later the defendants filed a motion for summary judgment in their favor. Strause filed a response along with a cross-motion for summary judgment in his favor.

The trial court issued an opinion and order granting the motion for summary judgment for the defendants along with findings of fact and conclusions of law.[2] In the opinion the court framed the issue before it as "whether the erection

_____

[2] Generally, trial courts should not make factual findings when ruling on a motion for summary judgment. *See Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citing *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991))

of 18.5 fences out of one hundred and fifty-one (151) homes constituted a general change in the character of the neighborhood such that the restrictive covenant providing the Board with discretion to restrict the erection of structures in the Subdivision should be deemed waived."

The court also stated the Board had made clear it would not approve further six-foot fences and had not approved any six-foot fences during the current directors' tenure. The court order concluded: "The restriction is not waived because the Board has not ordered the demolition of the now 17.5 six-foot fences."

The court also determined that the approximately eighteen existing fences had not changed the fundamental nature of the neighborhood and that the Board acted within its discretion in denying Strause's request. Ultimately, the court concluded: "even when viewing the evidence of record in the light most favorable to Mr. Strause, the Court is obliged to find that there are no genuine

---

("The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists.").

However, Strause has not argued that genuine issues of material fact remain and must be resolved by trial. Nor has he argued that the trial court erred in issuing findings of fact in ruling on summary judgment.

Instead, Strause has simply challenged the trial court's interpretation of Bradford Grove's governing documents and legal authority including statutes and argued that he is entitled to judgment in his favor. Moreover, we construe the trial court's "Findings of Fact" as simply an identification of undisputed facts such as Strause's having requested to build the fence and the Board's having denied this request—in contrast to the court's resolution of legal issues in its Conclusions of Law. (*See* Pages 2-3 of Opinion and Order granting summary judgment, attached in the Appendix to the Appellant red brief.)

issues of material fact which would make it possible for him to prevail in his [action requesting a] declaration of rights."

Additionally, the court determined that there was no evidentiary basis to support Strause's allegations that the Board acted in bad faith and ruled that the Board members could not be held individually liable. Moreover, it concluded Strause could not prevail on his claims for breach of fiduciary duty or punitive damages even when viewing the evidence in Strause's favor.

Strause filed a timely appeal. He points out there is no specific prohibition against six-foot fences in the governing documents. He also contends any such prohibition was waived or arbitrarily enforced by the HOA resulting in a fundamental change in the neighborhood, defeating the purpose of such a prohibition. He also asserts that no such prohibition against six-foot fences is enforceable unless it is expressly incorporated into governing documents such as the Declaration or HOA Bylaws. He further asserts the Board cannot reverse its prior history of allowing six-foot fences without a vote of the members. Lastly, he challenges the trial court's determination that individual Board members are not liable and that there was no basis for an award of punitive damages.

Further facts will be provided as needed in our analysis.

# ANALYSIS

## Standard of Review[3]

We review the trial court's grant of summary judgment based on its

interpretation of the governing documents and applicable legal authority *de novo*:

> The standard of review on appeal of a summary
> judgment is whether the trial court correctly found that
> there were no genuine issues as to any material fact and
> that the moving party was entitled to judgment as a
> matter of law. An appellate court need not defer to the
> trial court's decision on summary judgment and will
> review the issue de novo because only legal questions
> and no factual findings are involved.

*Majestic Oaks Homeowners Association, Inc. v. Majestic Oaks Farms, Inc.*, 530

S.W.3d 435, 438 (Ky. 2017) (internal quotation marks and footnotes omitted). *See*

*also Colliver v. Stonewall Equestrian Estates Ass'n, Inc.*, 139 S.W.3d 521, 523

(Ky. App. 2003) ("Interpretation or construction of restrictive covenants is a

question of law. Therefore, we review this matter de novo."); *Meier v. Jeff Wyler*

---

[3] Generally, we discern no substantial failure to comply with appellate briefing rules which substantially affects our resolution of this case. *See generally* Kentucky Rules of Appellate Procedure (RAP) 31(H)(1). However, the Index to the Appellant red brief's Appendix does not state where items in the Appendix are located in the record in violation of RAP 32(E)(1)(d). Moreover, the Appendix to the Appellant brief contains an item of correspondence which is not in the record, thus violating RAP 32(E)(1)(c). We decline to consider this item outside the record.

And though we are satisfied that all or most of the issues raised by Strause on appeal were also raised to the trial court, his Appellant red brief does not contain an explicit preservation statement at the beginning of his Argument. *See* RAP 32(A)(4).

For future reference, we direct the parties' attorneys to the Rules of Appellate Procedure and other resources available on our court website—including briefing checklists and a basic appellate handbook. https://www.kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last accessed Aug. 1, 2025).

*Alexandria, Inc.*, 685 S.W.3d 9, 11 (Ky. App. 2024), *citing Dolt, Thompson, Shepherd & Conway, P.S.C. v. Commonwealth ex rel. Landrum*, 607 S.W.3d 683, 686–87 (Ky. 2020) ("An appellate court must review a trial court's interpretation of statutes and its grant of summary judgment *de novo* (without deference) on appeal.").

### Governing Documents Do Not Specifically Prohibit Six-Foot Fences, but the Board had Authority to Approve or Deny Requests to Build Fences

Strause asserts that there is no specific prohibition against six-foot fences in Bradford Grove's governing documents. Appellees (the HOA and individual board members) do not dispute this assertion.

Appellees argue though, that despite the lack of any specific prohibition against six-foot fences in the governing documents, the Board had the authority to deny or to approve any requests to build structures on any property in Bradford Grove. According to Appellees' brief: "The Bradford Grove covenants vest the Board with power to restrict or approve <u>any structures</u> (including fences) that may be erected on the property."[4] (Emphasis in original.)

---

[4] Appellees do not cite to a specific page or two in the record showing where the Board's alleged power to restrict or approve structures is set forth in governing documents. Instead, they cite to a nearly thirty-page portion of the written record consisting of a brief addressing the parties' cross-motions for summary judgment, a portion of a deposition transcript, and a copy of the Declaration. We have expressed our disapproval of similar general citations to a large swath of the record in preservation statements. *See Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 377-78 (Ky. App. 2018) (although declining to impose sanctions, disapproving of appellant brief's preservation statement with general citation to an eighty-four-page portion of the record). *See also generally Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019).

In his reply brief, Strause does not contest Appellees' assertion that the Board had the authority under the governing documents to deny requests to build structures. Thus, it would not be proper for us to challenge *sua sponte* Appellees' uncontested assertion that the Board had the authority to deny requests to build structures. *See Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) ("It is not our function as an appellate court to research and construct a party's legal arguments[.]").

In sum, despite the lack of specific prohibition against six-foot fences in Bradford Grove's governing documents, the Board has the authority to deny, restrict or approve homeowners' requests to build structures on their properties. Moreover, the Board suggests it has adopted an informal policy of not approving any new six-foot fences to protect the "village charm" of Bradford Grove.

Next, we consider arguments about waiver and arbitrary enforcement.

**Trial Court Reached Proper Result as Restriction Requiring Board Approval for Erecting Structures was Not Waived Despite any Arbitrary Enforcement**

Strause argues on appeal that any prohibition against six-foot fences was either waived or arbitrarily enforced by the HOA and/or Board and resulted in a fundamental change in the neighborhood making the restriction unenforceable.

---

We remind Appellees' counsel that appellee briefs are also subject to appellate briefing rule requirements, including the requirement for specific citations to the record in the argument portion of one's brief. *See* RAP 32(A)(4); RAP 32(B)(4).

The trial court stated it agreed with Strause that: "there is no specific covenant to restrict the erection of six-foot fences." However, it also determined the Board had the authority to approve or deny requests to build structures including fences on homeowners' properties.

The trial court noted that precedent calls for construing restrictive covenants according to the parties' intention, *citing e.g.*, *Colliver*, 139 S.W.3d at 522. It further recognized the importance of considering "the general scheme or plan of development and surrounding circumstances." The court also took note that restrictions cannot be properly enforced where there has been a fundamental change in the neighborhood's character, and it is no longer possible to achieve the purpose of the covenant. *See Bagby v. Stewart's Ex'r*, 265 S.W.2d 75, 77 (Ky. 1954) ("[I]t seems well settled in most jurisdictions that the right to enforce a restrictive covenant may be lost by waiver or abandonment. The right of enforcement may also be lost by a general change in the character of the neighborhood to which the covenant applied. This is true even where the covenant is imposed as a part of a general plan or building scheme.").

The trial court stated: "Arbitrary enforcement of covenants does not necessarily render covenants unenforceable" but it also recognized that "when arbitrary enforcement has resulted in a fundamental change in the character of a neighborhood, the purpose of the covenants may be defeated and accordingly

-9-

become unenforceable." The court determined the Board had not waived its informal policy of denying further six-foot fences by not ordering demolition of existing six-foot fences and found that the 18 or so existing six-foot fences had not resulted in a fundamental change in the character of the neighborhood. And it held the Board had acted within its discretion in denying Strause's request. So, even construing the evidence in Strause's favor, it concluded there were no genuine issues of material fact which would make it possible for him to prevail on his action for declaratory relief.

Appellees contend the trial court properly determined there was no genuine issue of material fact and that the Board acted within its discretion. Their brief argues: "*Colliver* establishes that if there is substantial value in the continued enforcement of the provision, the Board can be entitled to continue to enforce it." They also assert that a Board member's deposition testimony "made it clear that the fence restriction adds value to the community by allowing it to maintain its intended 'village charm.'"

In his reply brief, Strause points to portions of the same board member's deposition testimony in which she stated the subdivision lost its village charm by previously allowing some six-foot fences. He also contends the HOA admitted it failed to take any sort of enforcement action against homeowners who built six-foot fences without the Board's approval. And he emphasizes there is no

dispute that some six-foot fences had been approved by the Board, albeit when the Board was composed of different individual members. He also points to a January 2022 letter to homeowners from the Board admitting that many alleged rules violations (specifically including six-foot fences) had been overlooked and allowed, but also stating an intent to return to adherence to HOA Bylaws and deed restrictions so the neighborhood could regain the village charm it was originally intended to have. He also emphasizes that at least two Board members had six-foot fences on or adjacent to their properties before he filed his lawsuit.

Appellees claim there was obviously no arbitrary enforcement because most homes in Bradford Grove do not have six-foot fences. They also contend the intent to protect village charm can still be promoted by denying requests to erect any further six-foot fences so that the existing six-foot fences do not create a fundamental change to the neighborhood's character.

In response, Strause points to the lack of published Kentucky precedent requiring that there be violations of a restrictive covenant on a majority of lots to establish a fundamental change in the neighborhood which would defeat enforcement. He suggests that violations of any prohibition against six-foot fences on approximately eleven percent of subject properties shows arbitrary enforcement and/or a fundamental change in the neighborhood's character.

Strause's frustration with his request to build a six-foot fence being denied despite other homeowners' being permitted to retain existing six-foot fences is understandable. And certainly, he is correct that Appellees have pointed to no specific prohibition against six-foot fences in any of Bradford Grove's governing documents. However, despite the lack of any specific prohibition against six-foot fences in the governing documents, the determinative restriction at issue here is the requirement set forth in the Declaration─Bradford Grove homeowners cannot build new fences or other structures on their properties without approval of the HOA. Like the restriction that detached garages could not be erected without the approval of the homeowners' association in *Colliver*, 139 S.W.3d at 523, Bradford Grove's Declaration states that homeowners are prohibited from altering or erecting structures (including fences) without HOA approval.

Specifically, Article V, Section 5(b) of the Declaration states fences cannot be erected or altered until construction plans are approved by the Developer. Article VI, Sections 1(a) similarly requires Developer approval for erecting or altering structures on any lot. Moreover, Article VI, Section 1(c) indicates the right of approval of new structures has now shifted to the HOA/Board now that the Developer no longer owns property in Bradford Grove.[5] And again,

---

[5] Article VI, Section 1(c) of the Declaration states:

Strause has not argued the Board lacks authority to approve or deny requests to build fences or other structures.

In short, the Declaration indisputably makes clear that Bradford Grove homeowners are not entitled to build fences on their properties without Board approval. As Strause points out, evidence shows that some other homeowners have not complied with this restriction by installing fences without seeking the Board's approval first and that the Board has declined to require the removal of such fences built without prior approval.

However, as Appellees have pointed out in briefs to this Court and to the trial court, Article VII, Section 1 of the Declaration states:

> Failure of any owner, the Association, or Developer to demand or insist upon observance of any of these restrictions, or to proceed for restraint of violations, shall not be deemed a waiver of the violation, or the right to seek enforcement of these restrictions.

Strause does not discuss this non-waiver clause in his briefs. Nor does the trial court's opinion and order granting summary judgment discuss this non-waiver clause.

---

References to "Developer" shall include any entity, person or association to whom Developer may assign the right of approval. When Developer no longer owns any lots in the Property [Bradford Grove], this right of approval shall automatically be assigned to the [Homeowners'] Association. References to "structure" in this paragraph shall include any building (including a garage), fence, wall, antennae . . . .

(R, p. 397.)

A similar non-waiver clause is mentioned in the facts of *Colliver*, 139 S.W.3d at 523. However, this non-waiver clause was not the sole basis for our rejection of the homeowner's assertion that the restriction at issue had been waived in *Colliver*. Instead, our analysis primarily focused on whether any prior failure to enforce restrictions had resulted in a fundamental change in the character of the neighborhood defeating the purpose of the restrictive covenants—though we did quote the non-waiver clause in our analysis as well. *See id.* at 525-26.[6]

Consistent with our opinion in *Colliver*, we construe the non-waiver clause in the Declaration as additional support for rejecting Strause's assertion of waiver. Moreover, we agree with the trial court that the record does not show a fundamental change in the neighborhood's character that would defeat the purpose of any relevant restriction though our reasoning differs somewhat from that of the trial court.

The trial court correctly recognized that the Board had the authority to approve or deny requests to build fences and other structures in Bradford Grove,

---

[6] There appears to be no binding, published Kentucky appellate precedent rejecting a homeowner's assertion that a restriction was waived by failure to consistently enforce that restriction or other restrictions based solely on a non-waiver clause. In contrast, an appellate court in at least one other state has held in a published opinion that a similar non-waiver clause was enforceable because it was unambiguous and not adverse to public policy. *See Drenter v. Duitz*, 883 N.E.2d 1194, 1202-03 (Ind. Ct. App. 2008). Such out-of-state authority is not binding on us, but some may find its reasoning to be persuasive.

and so acted within its discretion in denying Strause's request. The trial court also

stated in its opinion and order:

> The sitting Board has not approved a six-foot fence
> during their tenure. Further, they made their position
> clear that six-foot fences would not be approved because
> it would detract from the village charm that the
> Subdivision's developer intended. The restriction is not
> waived because the Board has not ordered the demolition
> of the now 17.5 six-foot fences. The Court finds that the
> 17.5 existing six-foot fences have not resulted in a
> fundamental change in the character of the Subdivision.
> Insofar as the Board was within their discretion to deny
> Mr. Strause's application. [sic] Accordingly, even when
> viewing the evidence in the light most favorable to Mr.
> Strause, the Court is obliged to find that there are no
> genuine issues of material fact which would make it
> possible for him to prevail in his declaration of rights.

Unlike the trial court, we do not necessarily focus on the number or

percentage of fences which are six feet tall as determinative—especially given the

fact that there is no specific prohibition against six-foot fences in the governing

documents.[7] Instead, we focus on the explicit and unqualified restriction that

---

[7] We decline to address the non-binding, unpublished opinions cited for our consideration in the parties' appellate briefs despite the parties' respective arguments that these unpublished opinions indicate that a fundamental change in character can only be found if a majority of lots do not comply with restrictions or that such a fundamental change could also be found based simply on one instance of undisturbed non-compliance. We urge counsel to review RAP 41(A)'s requirements before citing unpublished cases in the future.

Interestingly, the parties do not directly address whether determining if there has been a fundamental change in the neighborhood is an issue of fact or law or a combination thereof. Perhaps the parties view this as a pure issue of law here since both parties assert they are entitled to summary judgment in their favor.

-15-

Bradford Grove homeowners may not erect fences or other structures without HOA approval. And despite the fact the Board has not demanded the removal of some structures which were erected without seeking its approval, nothing in the record shows that the fundamental character of the neighborhood has changed to allow homeowners free rein to erect structures without Board approval. Moreover, to the extent that our reasoning differs from the trial court's, we may affirm for any reason supported by the record. *See generally Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

Next, we address Strause's argument that no prohibition against six-foot fences is enforceable without an amendment to the governing documents.

**Lack of Amendment to Governing Documents to Explicitly Prohibit All Six-Foot Fences Does Not Prevent Board from Exercising Its Discretion to Approve or Deny Requests to Alter or Erect Fences**

Strause contends that for a prohibition against six-foot fences to be enforceable, the governing documents would have to be amended to explicitly prohibit six-feet fences. We agree that to categorically forbid all six-foot fences, Bradford Grove's governing documents would have to be amended. However, despite the lack of explicit prohibition against all six-foot fences in the governing documents, Bradford Grove homeowners were still restricted from building or altering fences on their properties without obtaining Board approval first. And Strause has not directed our attention to any limits on the Board's authority to

-16-

approve or deny such structures. Moreover, the fact that pre-existing fences which were six feet tall or which had not been previously approved by the Board were allowed to remain did not divest the Board of its authority to approve or deny other requests to build fences—especially given the non-waiver clause contained in the Declaration. Thus, Strause was not entitled to relief for the Board's denial of his request to build a six-foot fence.

Furthermore, this case is distinguishable from *Tariq v. Worthington Glen Council of Co-Owners, Inc.*, 353 S.W.3d 634 (Ky. App. 2011), which Strause cites to argue he is entitled to build a six-foot fence based on the lack of amendment to governing documents to specifically prohibit six-foot fences. In *Tariq*, the owners rented out their condominium and were told that the rental was forbidden by Worthington Glen's bylaws. They consulted an attorney, who determined that the amendment forbidding rentals had been improperly put in place. So, the owners did not terminate the lease. *Id*. at 635.

This Court reversed the injunctive relief granted to Worthington Glen by the trial court, because we agreed with the Tariqs' contention that the amendment to the bylaws which prohibited rentals was neither proper nor controlling. We explained that this amendment conflicted with a provision in the master deed requiring that amendments relating to leasing must be approved by a greater percentage of condominium owners than that required to amend provisions

relating to other matters. *Id.* Moreover, we noted that the bylaws stated that if bylaw provisions conflicted with the master deed, the master deed was controlling. *Id*. at 635-36. Therefore, since amendments related to leasing required approval by 67% of owners but only 51% of owners had voted for the amendment to the bylaws prohibiting rentals, we concluded the amendment was invalid and that Worthington Glen failed to state a cause of action against the Tariqs. *Id*.

*Tariq* is distinct from this case because what was at issue there was an explicit—albeit invalid—restriction prohibiting rentals. Also, unlike here, there is no discussion in *Tariq* of any board or similar entity having the discretion to approve or deny condominium rentals.

In contrast, here there is no explicit prohibition against six-foot fences in Bradford Grove's governing documents. Instead, the restriction which has stymied Strause's desire to build a six-foot fence on his property is not an explicit restriction against six-foot fences but is simply an explicit restriction against building fences without HOA approval. Moreover, Strause has pointed to no evidence that this restriction in the Declaration requiring HOA approval for building or altering structures was improperly adopted.

In sum, this case is distinct from *Tariq*, 353 S.W.3d at 634, and substantially like *Colliver*, 139 S.W.3d at 521. Regarding Strause's desire to build a six-foot privacy fence on his property, like the Collivers' desire to build a

detached garage to house vehicles on their property, "[t]he covenants unmistakably restrict this use unless approval is given." *Id.* at 526. Next, we address Strause's arguments about potential Board member liability and punitive damages.

**Trial Court Did Not Err in Holding Board Members Could Not be Held Individually Liable and in Declining to Award Punitive Damages**

Strause contends the trial court erred in not awarding punitive damages and in not finding that Board members acted in bad faith or engaged in willful and wanton misconduct with reckless disregard for others' rights. Citing KRS[8] 273.215, he argues the Board members failed to act in good faith, on an informed basis, and in a manner honestly believed to be in the HOA's best interest.

In response, Appellees assert that individual Board members are immune from civil liability pursuant to KRS 411.200 since they are unpaid directors of a non-profit organization. They also argue there is no evidence that Board members acted outside the scope of their official duties, in bad faith, or in reckless disregard of others' rights and safety. Moreover, they point to Section VI of the HOA's Bylaws,[9] which states, "Bradford Grove shall indemnify and hold

---

[8] Kentucky Revised Statutes.

[9] Instead of directing this Court to a specific page or two in which this written provision can be found in the written record, Appellees generally direct this Court's attention to an approximately twenty-page-long deposition transcript located at R, pp. 328-47. Section VI of the HOA Bylaws is contained at page 282 of the record. Again, we admonish counsel to make more specific citations to the record in the future. And we implore counsel to take greater care to accurately cite to the record in future briefs. Future panels of this Court may not be so lenient.

harmless every Director and Officer" for actions in which Board members are made parties due to serving as Directors or Officers, "except in relations to matters as to which he or she shall be finally adjudged to be liable for fraud or bad faith in conduct[.]"

Strause's reply brief does not clearly respond to Appellees' assertions that the Board members are immune from individual liability. However, he points out the Board initially stated it denied his request based on the original builder's bylaws. Strause suggests the builder's bylaws never existed since Appellees never produced such builder's bylaws and later pointed to provisions in the Declaration as the basis for the denial of Strause's request.

To the extent that Strause suggests that the Board's initial citation to non-existent builder's bylaws shows bad faith, this issue was not clearly raised to the trial court. Strause's written summary judgment motion response/cross-motion pointed out in its factual recitation that the Board initially premised its denial of his request as being based on the original builder's bylaws, but the Board never produced the builder's bylaws and later stated its denial was based on provisions in the Declaration instead. However, Strause did not explicitly argue in his written response/motion that the Board's initial citation to a non-existent document showed bad faith rather than confusion or a mistake. Nor has he provided a

specific reference to a recorded hearing where he orally contended the citation to a non-existent document showed bad faith.

In short, it does not appear that this issue was preserved for appeal. Nor do we discern any palpable error resulting in manifest injustice, *see* CR[10] 61.02, in the trial court's determination that there was no evidence of bad faith or willful and wanton misconduct—despite the Board's initial citation to a non-existent document in denying Strause's request.

Disregarding the Board's initial citation to a non-existent document, Strause's other arguments for holding Board members liable and awarding punitive damages are, quite simply, rehashes of his arguments for declaratory relief. For example, he argues bad faith is shown by the Board's failure to adhere to a prior practice of allowing six-foot fences, its denying his request despite not seeking the removal of pre-existing six-foot fences (including some located on Board members' property), and its declining to take steps to amend the governing documents to specifically prohibit six-foot fences. However, given the Board's prerogative to approve or deny requests to build fences and other structures, Strause has cited to no evidence showing the Board acted in bad faith or engaged in willful, wanton, or malicious conduct with reckless disregard for the rights of Strause or others. There was nothing in the record to show a violation of KRS

---

[10] Kentucky Rules of Civil Procedure.

273.215 or to sustain a claim for punitive damages pursuant to KRS 411.184 and the Board members cannot be held individually liable pursuant to KRS 411.200 under the facts here.

In short, we discern no reversible error in the trial court's holding that individual Board members were not liable and there was no basis for punitive damages. Nor do we discern reversible error in its denial of declaratory relief.

Further arguments raised in the parties' briefs have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William A. Merrifield
Richard V. Hornung
Louisville, Kentucky

BRIEF FOR APPELLEES:

J. Stan Lee
Katie Bouvier
Lexington, Kentucky